## RINKER *v.* RINKER.

GIFT—ACTION.—Where a mother sold her real estate and caused two of the notes, given to secure the purchase-money thereof, to be made payable to her son, then three years old, and then delivered them to his father for safe keeping for the son, and the father afterwards died, making the mother his executrix, and she, as such, then obtained the custody of his papers, including said notes, and thereafter, in her individual name, purchased a tract of land of the payor of said notes, and in part payment therefor cancelled said notes and delivered them to him.

*Held,* that said facts constituted a valid and executed gift of said notes by the mother to her son, and that her conversion thereof to her own use was wrongful, and entitled the son, by his guardian, to recover of her the value thereof.

*Held,* also, that if she really committed a breach of trust in making said gift to her son, she is estopped to question the title of her donee by setting up said breach of trust in bar of his action for the value of said notes.

APPEAL from the *Morgan* Common Pleas.

DAVISON, J.—The appellee, as guardian of one *Oliver Rinker*, a minor, sued *Lucinda Rinker*, alleging, in his complaint, that on *January* the 15th, 1859, one *Silas Rinker* executed to said *Oliver* two promissory notes, each for the payment of 200 dollars, and payable, one at twelve months, and the other at two years.

It is averred that the defendant wrongfully took said notes into her possession, and converted them to her own use, by delivering them to *Silas Rinker*, the maker thereof, in payment of a debt due from her to him, and that he, *Silas*, cancelled said notes by tearing his name therefrom; wherefore, &c.

The issues were submitted to the Court, who found for the plaintiff 400 dollars, and having refused a new trial, rendered judgment, &c.

The facts of this case are substantially as follows :

In the year 1849, one *Joseph Hiatt* died testate, leaving the present defendant, *Lucinda Rinker*, then *Lucinda Hiatt*, his widow, and nine children, who were his heirs at law. The testator's will appointed the defendant his executrix and guardian of the persons and estate of his children, and then provided that after the payment of debts, &c., all his real and personal property should remain in the hands of his wife, in trust, for the support and education of said children, until the youngest child should arrive at the age of twenty-one; and that upon the arrival of all the children at that age, an equal division of whatever might remain unexpended for the purposes aforesaid was to be made amongst them, share and share alike, *reserving to the widow all her rights given her by law.* Immediately after the death of *Hiatt*, the defendant entered upon her duties as executrix, &c., under the will. She received personal property belonging to the estate worth 768 dollars, and, as executrix, paid debts to the amount of 234 dollars. *Hiatt*, at his death, left a farm of 160 acres, of which 90 acres were in cultivation. The executrix and her children, being also the children of *Hiatt*, remained on the farm until *October*, 1853, when she was married to one *Levi Rinker*, and removed with him to his farm, taking with her five of the children of her former marriage, and a portion of the personal property on the farm at the time of her marriage. The value of this property is not proved. It consisted, however, of six head of cattle, four horses, and seventy head of partly fatted hogs. While on the farm left by her former husband, viz., on the 24th of *April*, 1852, the defendant purchased of one *Thomas Neff* eighty acres of land for the consideration of 1040 dollars, received of *Neff* a deed of conveyance, and paid him 640 dollars of the purchase-money. This payment was made prior to her marriage with *Levi Rinker*—leaving the residue, 400 dollars, unpaid at the time of the marriage.

Rinker *v.* Rinker.

There was evidence tending to prove that the 640 dollars paid to *Neff* by the defendant was derived in part from the estate of *Hiatt,* then in her hands as executrix, and partly from the cultivation of the *Hiatt* farm, and that the 400 dollars was paid after the marriage by said *Levi Rinker* out of moneys received by him from the sale of the hogs taken to his farm as aforesaid. In *October,* 1854, the defendant, with the assent of her husband, sold the *Neff* land to *Silas Rinker* for 2000 dollars, to be paid as follows: 1000 dollars to the heirs of *Hiatt,* and the residue, being 1000 dollars, to herself. *Silas Rinker,* the purchaser, executed his several promissory notes, in accordance with the terms of sale, and received from defendant and her husband, *Levi Rinker,* a deed in fee-simple. After this, viz., in the year 1856, the house of *Levi Rinker* was burglariously entered, all his papers were stolen, and among them the note for 1000 dollars given to the defendant by *Silas Rinker.* The note thus stolen was never recovered or found, and she, defendant, having called upon *Silas Rinker* for a new note, it was, at her special request, agreed between them that, in lieu of the lost note, he should execute to her and her husband a note for 600 dollars, and for the residue, 400 dollars, he should execute two several notes, each for the payment of 200 dollars, and each payable to said *Oliver Rinker,* the only child of defendant by her then husband, *Levi Rinker,* and then about three years old. The notes were executed as agreed on by the parties. Those made payable to *Oliver Rinker* were passed over to his father and mother. His father put them away and kept them among his papers until his death, which occurred in *July,* 1858. At the time these notes were executed, defendant, *Oliver's* mother, stated that his father, *Levi Rinker,* had worked hard to pay for the land, and it was right that *Oliver* should have the notes. To this *Levi* assented, and, at the time, put his hand on *Oliver's* head and said to him, "Aint you a brave

little man for your mother to give you 400 dollars?" After *Levi Rinker's* death, the defendant, then his widow, became his administratrix, and, as such, took possession of his papers, among which were the notes payable to *Oliver Rinker;* and, afterwards, she, defendant, repurchased "the *Neff* land" of *Silas Rinker*, received from him a deed in fee, and, in consideration therefor, conveyed to him her interest in the intestate's estate, and also delivered up to him the two notes which were by him cancelled as aforesaid.

As has been seen, the present suit was instituted by the guardian of *Oliver Rinker* against the defendant to recover the amount of the notes. The Court, upon the above facts, found for the plaintiff, and the only question to settle is, Are they sufficient, in point of law, to sustain the finding?

For a new trial the appellant assumes two grounds: 1. The "*Neff* land," having been purchased and paid for out of money and means derived from the estate of *Hiatt*, was held by the defendant in trust for his heirs, and she having sold the land thus purchased, became their trustee for the purchase-money, and could not, therefore, make a valid gift of any part of it. 2. Conceding that the property was not so held in trust, still the transaction of the execution and delivery of the notes was really no gift, but a mere attempt to make one.

The first ground is untenable. The facts, as we understand them, do not allow the conclusion that defendant was the trustee of *Hiatt's* heirs for the entire estate left by him at his death. Under the statutes in force when he died, as also by the provisions of his will, she was entitled to personal property worth 150 dollars, and, after payment of debts, &c., to one-third of the residue; and further, she was entitled to her dower in his real estate, and to occupy and use his mansion-house and messuage belonging to it, for the space of one

year from her husband's death.   *Stewart* v. *Renker,* 17 Ind.
264.

It may be fairly inferred from the evidence that her interest in the estate, over and above what she had herself received, was at least equal to the sum given by her to the plaintiff's ward; that the gift was, in effect, the disposal of her own individual property, and that the heirs of *Hiatt* have, therefore, no right to complain.   But suppose the defendant, in making the gift, really committed a breach of trust, she can not, in our judgment, set up such breach in bar of this action, because, having transferred the property as a valid gift, she has no right to question the title of her donee.

The second assumed ground remains to be considered. The notes, as we have seen, were executed to *Oliver Rinker* by the direction of the defendant, were given in consideration of real estate sold and conveyed, and were placed in the custody and keeping of his father, the donee, at the time, not being more than three years old.   Do these transactions constitute a valid gift?

It is essential to the validity of a gift, that the subject of it be delivered; "the donor must part not only with the possession, but with the dominion, of the property." 2 Kent's Comm. 439.   The delivery, however, need not be direct to the donee himself.   If the thing given be delivered to another for his use, it will be sufficient, provided the effect of the transaction is to divest the donor of all title to the property.   *Stewart* v. *Weed,* 11 Ind. 92; *Sims* v. *Sims,* 2 Ala. 117; *Pope* v. *Randolph,* ——— 214; *Grandiac* v. *Arden,* 10 Johns' R. 298.   The exposition thus made is no doubt correct, and when applied to the gift in question, at once shows that it possessed all the essential requirements of an operative gift.

The notes were executed to the donee and placed in the hands of his father for his use, by the express direction and assent of the defendant, his mother, who owned the proper-

ty, and had the right to dispose of it; and though he was not of full age, it must be presumed that he accepted them as a gift, because they were for his benefit. *Stewart* v. *Weed, supra;* Broom's Comm. 275, 276; *Souverbye* v. *Arden,* 1 John. ch. 240; *Grandiac* v. *Arden, supra.*

*Per Curiam.*—The judgment is affirmed, with costs, and 5 per cent. damages.

*W. V. Burns,* for the appellant.

*W. R. Harrison,* for the appellee.