## T. G. CARRADINE, ADMINISTRATOR, *v.* ESTATE OF BIRD CARRADINE.

1. GIFT. *Of personal property. Delivery. Case in judgment.*
   In 1863, B. C. and W. C., brothers, buried a certain sum in silver dollars, belonging to them equally. W. C. died soon after the civil war, and C. C became his executor. In 1876, B. C., who was old and unmarried, told C. C. that he wanted his brother T. C. to have his portion of the buried treasure, and that after his death it must be dug up and equally divided between T. C. and himself as executor. B. C. made the same statement and direction to T. C. But afterwards B. C. and C. C. concluded to disinter the money, without waiting for the death of the former. They sent for T. C., and he and C. C. made search for the money, which was in two boxes, one of which they found readily, but failed to find the other until they had brought B. C. to the scene and received his directions. Both boxes were carried to the house jointly occupied by B. C. and C. C., near by. Six days thereafter B. C. died, and on the day after his burial the money was equally divided between C. C. and T. C. Some of the heirs of B. C., but not C. C., contended that there was not such a delivery to T. C. as to pass to him the title of the money thus received. *Held,* that the sending for T. C., the direction to dig up the money, the identification of the place where it was to be found, the disinterment in obedience to the directions, and the nominal possession of it by T. C. in its transportation to the house, constituted a delivery and perfected the gift.

2. SAME. *Property in possession of third person. Donatio causa mortis.*
   Even if the gift in the case above stated was not good as a *donatio inter vivos*, because the subject of it was left in the possession of C. C., it became effectual, as a donation *causa mortis* by being left with him for T. C., and by the death of the donor without a revocation.

3. SAME. *Delivery of property. Preceding or succeeding words of donation.*
   Though the delivery of personal property, the subject of a gift, whether *inter*

*vivos* or *causa mortis*, is essential to the consummation of the gift, it need not be simultaneous with the words of donation, but may either precede or succeed them. If it precedes the words of donation, so that the property is already in the possession of the donee, no new delivery is necessary. If it succeeds such words, it makes perfect that which was before inchoate.

4. CHANCERY PRACTICE. *Trial by jury. When improper.*

It is proper for a chancellor to refuse a request for a trial by jury in a case where there is no conflicting evidence and no question of fact to be determined.

5. SAME. *Granting of trial by jury. Discretionary with chancellor.*

The granting of a jury trial in the Chancery Court, where none is prescribed by statute, is a matter within the discretion of the chancellor.

APPEAL from the Chancery Court of Clay County.

Hon. GEORGE WOOD, Chancellor, by interchange with Hon. F. A. CRITZ.

The case is stated in the opinion of the court.

*Barry & Beckett*, for the appellant.

1. We think there is no doubt that the administrator was entitled to a jury trial. It was regulated by statute, under the Probate Court practice. Dig. 1839, p. 227, sects. 88, 89; How. & Hutch. Code, 404, sects. 67, 68; Code 1848, p. 663, sect. 89; Code 1857, pp. 441, 442, arts. 74, 79. Under these statutes, cases similar to the one at bar have always been held to be " peculiarly appropriate " for a jury. *Compton* v. *Compton*, 6 Smed. & M. 194; *Ratliff* v. *Ratliff*, 12 Smed. & M. 134; *Crosby* v. *Covington*, 24 Miss. 619; *Kelsey* v. *Smith*, 1 How. 68. The same statutes have been carried forward into the Code of 1871, under which this case was tried in July, 1880. Code 1871, sects. 1128, 1133. This sect. 1128 directs an issue at law, but this is merely cumulative, as the Probate Court had power of itself to try an issue before a jury (*Yoke* v. *Barnett*, 1 Binn. 358, 364), and certainly the Chancery Court has. Code 1871, sects. 1032, 1272.

The right of trial by jury is a sacred right, and should never be denied, even when the statute is silent. *Scott* v. *Nichols*, 27 Miss. 94; *Scott* v. *Bilgerry*, 40 Miss. 120; *Donovan* v. *Vicksburg*, 7 Cushm. 247. It is said that where a statute says

the Chancery Court *may* direct an issue, that the word "may," being in favor of a great public right, is compulsory.  3 Greenl. on Ev., sects. 261, 266, *et seq.*  And it is elsewhere held that the discretion of the court in reference to a jury trial has become merely nominal in America.  Adams' Eq. (5th ed.), marg. p. 376, and note 1.

Our Supreme Court has held that the people, in adopting a Constitution, have reference to the laws in force at the time, and that under the provision, "the right of trial by jury shall remain inviolate," the right cannot be denied in any case where it then existed, and that the courts should rather extend than abridge it.  *Isom* v. *Mississippi Central R. Co.*, 7 Geo. 300.  At common law the remedy in this class of cases was by suit on the bond (*Lynde* v. *Denison*, 3 Conn. 389), or trover or detinue by the heirs.  It was, in fact, simply an action of *devastavit*, which was always tried at law, and can be yet under our Code.  Code 1871, sect. 1180; Code 1880, sect. 2084.

We have shown that the common-law remedy in this class of cases is in *devastavit* by suit on the bond, or trover or detinue.  Where the party has a remedy at law, and goes into chancery, if an issue of fact is involved the Chancery Court should decline to entertain the suit, or else grant a jury trial. 1 Story's Eq. Jur., sects. 72, 73; 3 Greenl. on Ev., sects. 262–267.

The Supreme Court of South Carolina have held, in a case similar to this one, that if it was not absolutely certain that there was no gift, the issue should be referred to a jury.  *McGinney* v. *Wallace*, 3 Hill (S. C.), 254.

2. The court below erred in deciding that the administrator must account for the $671.  We think the testimony of B. C. Carradine and J. B. E. Carradine abundantly shows that this was a complete *donatio causa mortis*.  The only difference between a gift *inter vivos* and a *donatio causa mortis* is, that the one goes into effect at once, and is irrevocable, while the other does not go into effect until the death of the donor, and is revocable.

1 Pars. on Con. 237, and note *k;* 1 Story's Eq. Jur., sects. 606, 607 c, *et seq.;* 2 Redf. on Wills, 299 *et seq.;* 2 Kent's Comm., marg. p. 444 *et seq.; Grimes* v. *Hone,* 49 N. Y. 17; *Southerland* v. *Southerland,* 5 Bush, 591; *Allen* v. *Cowan,* 23 N. Y. 502; *Wing* v. *Merchant,* 57 Me. 383; *Wells* v. *Tucker,* 3 Binn. 366; *Rinker* v. *Rinker,* 20 Ind. 185; *Wyble* v. *McPheeters,* 52 Ind. 393; *Stevens* v. *Stevens,* 2 Hun, 470; *Whiting* v. *Barrett,* 7 Lans. 107; *Gillespie* v. *Burleson,* 28 Ala. 551; *Winter* v. *Winter,* 1 El. Bl. & S. 997; *Drury* v. *Smith,* 1 P. Wms. 404; *Snelgrove* v. *Snelgrove,* 3 Atk. 214; *McGinney* v. *Wallace,* 3 Hill (S. C.), 254.

Bird Carradine, being ill, told his nephew, B. C. Carradine, if he should die before this money was taken up, to dig it up and give his half of it to T. G. Carradine. Bird Carradine died in a few days afterwards. Now, here is a thing *in esse,* a sickness, an intent to give, and the donor dying soon afterwards. All this is clear. The only remaining ingredient is delivery. And we think the fact of the delivery is equally as clear. Bird and William G. Carradine, the father of B. C. Carradine, were equal partners, and owned this money jointly, and it was buried by them. B. C. Carradine succeeded his father as the partner of Bird, and was also his father's executor, and reported this money in his inventory of his father's estate; so there can be no doubt that he had a joint possession, both in law and in fact, as partner, heir, and executor. No further delivery was necessary. He became thereby a trustee of the money for T. G. Carradine. No formal delivery is required if the property is already in the possession of the donee, or of the person who is to make delivery. *Waring* v. *Edmonds,* 11 Md. 424; *Penfield* v. *Thayer,* 2 E. D. Smith, 305.

It is not at all necessary that the words of gift and the delivery should be simultaneous. *Gillespie* v. *Burleson,* 28 Ala. 551. The delivery of the subject of a gift may be presumed. *Carradine* v. *Collins,* 7 Smed. & M. 428; *Young* v. *Young,* 3 Cushm. 38; *Waring* v. *Edmonds,* 11 Md. 424.

Where the words or acts are ambiguous, extrinsic circumstances — such as the relations between the parties, and their interest in or obligations to each other — may be shown. 2 Redf. on Wills, 324, sect. 18; *Waring* v. *Edmonds*, 11 Md. 424; *Smith* v. *Maine*, 25 Barb. 33.

*R. C. Beckett*, of counsel for the appellant, argued the case orally.

*Fred Beall*, for the appellee.

1. The pleadings, practice, and proceedings in matters of estates conform now in this State to the rules of pleading, practice, and proceedings in general courts of equity. Acts 1875, p. 114.

It is discretionary with the chancellor to direct an issue to a jury or to try it himself. The issue is directed to a jury only for the better information of his conscience. If he is fully satisfied as to the evidence, he will not send it to a jury. *Pittman* v. *Lamb*, 53 Miss. 594; *Tappan* v. *Evans*, 11 N. H. 131; *Townsend* v. *Graves*, 3 Paige, 453; 2 Dan. Ch. Pr. (4th Am. ed.), chap. 27, p. 1072 *et seq.*

The issue sought to be submitted in this case was not one of fact, but of law. There was no dispute about the facts.

2. The pretended gift of the Mexican silver by the deceased to the administrator was void under the Statute of Frauds. Code 1871, sects. 2893–2895.

A gift of personal property, to be effectual, should, in general, be accompanied by delivery of possession, whether the gift be *inter vivos* or *causa mortis*. Schouler's Pers. Prop. 110; 2 Kent's Comm. (11th ed.), marg. p. 438, top p. 565 *et seq.; Sims* v. *Sims*, 2 Ala. 117; *Gillespie* v. *Burleson*, 28 Ala. 551; *Carradine* v. *Carradine*, 7 Smed. & M. 428.

Parol gifts of personal property do not pass the property if there be no actual delivery to the donee. Benj. on Sales (2d ed.), note to p. 3; *Thompson* v. *Thompson*, 2 How. 737; *Marshall* v. *Fulgham*, 4 How. 216; *Cook* v. *Husted*, 12 Johns. 188; *Fink* v. *Cox*, 18 Johns. 145.

The testimony of the administrator of B. C. Carradine and

of J. B. E. Carradine shows that there was no delivery of the money, and hence no title ever passed to the administrator.

*Fred Beall* also made an oral argument.

CHALMERS, C. J., delivered the opinion of the court.

Thomas G. Carradine, administrator of his deceased brother, Bird Carradine, omitted in his final settlement to account for $671 of Mexican coinage which he was known to have in his possession, and which the distributees claimed as belonging to the estate of the decedent, but which he asserted was his own property. The chancellor sustained an exception to his account based on such omission, and compelled him to account for the money; and from this decree he appeals. His title to the money rests upon an alleged gift of it to himself by his deceased brother, and the validity of the gift depends upon the question of whether or not it was perfected by a delivery of the money. The facts are as follows: The deceased, Bird Carradine, in conjunction with another brother, William G. Carradine, buried in 1863 a sum of Mexican silver dollars, which belonged in equal portions to the two. William died a few years after the close of the war, the money remaining buried. His son, B. C. Carradine, became his executor, but the money was permitted to remain in the earth. In 1876, Bird Carradine, who was very old, and unmarried, and rapidly growing feeble, told B. C. that he wanted his brother Thomas to have his portion of the buried treasure, and that after his death it must be dug up and equally divided between said Thomas and said B. C., as the executor of his father's estate. He made the same statement and direction to Thomas. A few days before his death, however, he and B. C. changed their minds, and concluded to disinter the money at once. They sent for Thomas, and he and B. C. proceeded to make search for the money, which was in two boxes. One box they found readily, and this box Thomas proposed to appropriate; but, B. C. objecting, they continued their search for the other. They failed to find it, and, after many hours of vain attempt

to do so, were forced to bring Bird Carradine to the scene. Directed by him, they soon found the other box. Both boxes were carried to the house jointly occupied by Bird and B. C. Carradine, in the grounds connected with which they had been buried. Six days afterward Bird Carradine died, and the day after his burial the money was equally divided between B. C. and Thomas, in accordance with the directions previously given by the deceased. Some months thereafter Thomas qualified as administrator of his brother's estate. B. C. Carradine sets up no claim to the money in question, either on behalf of himself or his father's estate, but some of the other heirs-at-law of Bird contend that there was no such delivery of it as to pass title to Thomas, and this view was taken by the chancellor. We do not concur in this view. Delivery of personal property is essential to a gift, whether *inter vivos* or *causa mortis*, but it is not essential in either case that it should be simultaneous with the words of donation. It may either precede or succeed the words. If it precede the words, so that the property is already in possession of the donee, no new delivery is necessary; if it succeeds the words, it makes perfect that which was before inchoate. In the case at bar the words had been previously spoken, both to the donee and to the nephew, B. C. Carradine. The subsequent sending for the donee, the directions to dig up the money, the identification of the place where it was to be found, the disinterment of it in obedience to the directions, and the manual possession of it by the donee in its transportation to the house, constituted a delivery and perfected the gift. That it was not divided between the donee and the other joint-owner does not affect the result, nor does its temporary deposit in the house jointly occupied by the deceased and the other joint-owner. It was during this time no more in the possession of the deceased than of the nephew, the legal owner of one-half of it; and it is well settled that a *donatio causa mortis* is good if the property is either delivered to one person to be given to another after the death of the donor, or if, being already in the pos-

session of a third person, it is left there with directions to be so given. Even if the gift in this case should be held not good as a *donatio inter vivos* because the subject of it was left in the possession of B. C. Carradine, it became effective as a *donatio causa mortis* by leaving it with him for Thomas G. Carradine, after the death of the donor. *Southerland* v. *Southerland*, 5 Bush, 592; *Waring* v. *Edmonds*, 11 Md. 424; *Wyble* v. *McPheeters*, 52 Ind. 393; *Rinker* v. *Rinker*, 20 Ind. 185; *Grymes* v. *Hone*, 49 N. Y. 17; *Allen* v. *Cowan*, 23 N. Y. 502; *Carradine* v. *Collins*, 7 Smed. & M. 428.

There was no error in the refusal of the chancellor to award a trial by jury. There was no question of fact to be determined, there being no conflicting evidence; and even if there had been, the granting of a jury trial, in the Chancery Court, where no statute prescribes one, is always discretionary with the chancellor, as has several times heretofore been announced by this court.

Decree reversed and cause remanded for a decree in the Chancery Court in accordance with the views announced in this opinion.