## MERTON A. DAVIS v. HENRY KUCK.[1]

November 4, 1904.

Nos. 14,083—(50).

**Gift Causa Mortis.**

Evidence with reference to the acceptance and delivery of a gift causa mortis was properly submitted to the jury, and *held:* If such gift was made and accepted in good faith, new and formal acts of delivery were not necessary where the property was already in possession of the donee, and the subsequent possession and control thereof prior to the donor's death were consistent with ownership.

**Burden of Proof.**

The evidence was not sufficient to require the court to instruct the jury that the burden of proof was upon respondent to show that the gift was not obtained by undue influence.

Action in the district court for Renville county to recover possession of a team of horses, or $300 the value thereof, in case possession could not be had. The case was tried before Powers, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Bowers & Howard,* for appellant.

*J. M. Freeman,* for respondent.

1 Reported in 101 N. W. 165.

LEWIS, J.

William H. Davis was afflicted with cancer, and had been confined to his bed for about three weeks. He was residing with his family upon his farm, and five days before his death, as testified to by plaintiff's brother, the following conversation occurred in presence of the two brothers and the stepmother:

> Q. What was said at the time by your father and brother regarding this team? A. He said to my brother he had never given him anything; he would give him that team. Q. What did your brother say? A. My brother said he would take the team.

A few months prior to his death Mr. Davis executed a will, by which he bequeathed all of his real estate to the children of his second marriage, subject to a life estate by the mother. Plaintiff and his brother, Harry, were children of a former marriage, and the will made no provision for them.

Plaintiff was twenty-eight years old at the time of his father's death, and until he was of age had remained on the farm, working for his father. Thereafter he had been at home off and on, helping with the work, but it does not appear whether his services were donated or whether he received compensation, except for work done in the harvesting season of 1902. The other son, Harry, testified to a verbal lease of the farm from his father for the year 1903, but it was not shown upon what terms the produce was divided or the personal property used. This team was kept in the only barn on the premises, fed from the common supply, and was used by the father. Plaintiff was home during the harvest season of 1903, and then went away, but returned during the first week of his father's last sickness, remaining with him and caring for him until his death, during which time plaintiff also cared for and fed the team. The day after the alleged gift plaintiff used the team to drive to the adjoining village for medicine for his father, but nothing further, than as above stated, was done while the father lived, to indicate acceptance and delivery of the team as a gift. After the demise of the father, plaintiff arranged with his brother to care for the team during his absence, agreeing to pay him therefor,

and saying he would be back as soon as possible. Soon after his departure the widow claimed the team as a part of the personal estate, and it was set aside as a part of her allowance. Defendant claimed title from the widow, and refused to deliver the horses, and this action was brought in replevin to secure possession of the team.

1. The court submitted to the jury the question whether or not there had been a gift of the property to respondent, and instructed them: That there must have been a delivery of the property to the donee. That no absolute rule could be laid down as to what constituted sufficient delivery in such cases. That in each case the character of the delivery required depended largely upon the subject-matter of the gift. That in this case the father was bedridden, and could not go out and point out the property and make a special or formal delivery. That plaintiff, his son, was living with him at the time, and had been working there during the harvest; and that under those circumstances the law did not require the same formality as to delivery that it might in some other case. "Thus, where the donee and donor  *  *  *  reside together, as in the case of husband and wife, parent and child, it is not necessary that the thing given should be moved from their common residence. It is sufficient if it clearly appears that the donor has relinquished and the donee has acquired all dominion over and control of the property." That it is not, under the circumstances, necessary that a formal delivery by the father be made. That if, under such circumstances, a sufficient delivery had been made, then title passed to plaintiff. The correctness of this instruction is called in question.

The first question presented is whether a gift, either inter vivos or causa mortis, is established. The general requirements are, to constitute a valid gift inter vivos, it must be voluntary, gratuitous, and absolute; in other words, the donor must be competent to contract. There must be freedom of will; the gift must be complete; the property must be delivered by the donor and accepted by the donee, and the gift must go into immediate and absolute effect. 14 Am. & Eng. Enc. (2d Ed.) 1015, and cases cited. A gift causa mortis is generally defined as follows: "A gift of personal estate, made in prospect of death at no very remote period, and which is dependent upon the condition of

death occurring, substantially as expected by the donor, and that the same be not revoked before death." 2 Redfield, Wills, § 42. The requisites to both are practically the same, the principal distinction being that in one case the gift is absolute and irrevocable, whereas in the other it is a conditional gift, taking effect only upon the death of the donor, who, in the meantime, has the power of revocation. In either case the gift must be complete, and the property delivered and accepted.

In view of the fact that Mr. Davis was stricken with an incurable disease; had been confined to his bed about three weeks; that he was gradually growing weaker, and his approaching death was the subject of conversation; that the team in question was used by him personally in connection with his business upon his farm—we think this gift must be treated as a gift causa mortis. In other words, that it was made in contemplation of approaching death, and would not otherwise have been made; consequently there was the condition implied that, if he should recover, it would be subject to revocation. Although the witness Harry Davis, in testifying as to what took place with reference to the gift, did not repeat the exact words of the parties, but stated that his father said "he would give" and that plaintiff said "he would accept," we do not think this testimony is subject to the criticism that it contemplated a purpose on the part of the father to give the team to respondent at some future time. The expression "would give" is apparently that of the witness, rather than of the donor, and, considering the situation of the parties and the surrounding circumstances, it would be an unwarranted conclusion to assume that the language actually used by the father was not intended to accomplish an immediate transfer and acceptance of the property.

Defendant relies upon Allen v. Allen, 75 Minn. 116, 77 N. W. 567, as authority for the proposition that the facts now under consideration do not constitute a sufficient acceptance and delivery of a gift causa mortis, but there is this difference between the cases: In Allen v. Allen the donee neither accepted the gift at the time conferred, nor did he exercise any acts of ownership over the property prior to the death of the donor, while in the case now before us the donee expressly accepted the gift, and continued in possession of the property.

It may be conceded that the donee's acts signifying dominion over the property did not differ in any respect from those preceding the conferring and accepting of the gift—that he continued to feed and care for the team as before. But does that make any difference, if such continued possession and exercise of dominion were all incidental to and not inconsistent with ownership?

In Drew v. Hagerty, 81 Me. 231, 17 Atl. 63, it was held that continued possession of the same character after the conferring of a gift causa mortis would not constitute delivery, but we are unwilling to go to the limits defined in that decision.

Our views are more nearly expressed in the case of Cain v. Moon [1896] 2 Q. B. 283. While true, a stricter rule should be applied as to delivery in the case of a gift causa mortis than with reference to gifts inter vivos, yet, as in this case, when it appears that the gift was made in good faith, and the only question is the sufficiency of delivery, we think it was fairly a question for the jury to determine from all the facts and circumstances whether there was a sufficient acceptance and delivery. There was no error in the instruction of the court upon this branch of the case. The charge was ample, and stated the law correctly.

2. We find no evidence in the record which calls upon the court to submit to the jury an instruction to the effect that the burden of proof was upon plaintiff to show that the gift was not obtained by undue influence, and that there was evidence in the case to indicate that the father was of feeble mind.

3. The court was requested by defendant to charge the jury as follows:

> The jury are instructed that, in order to constitute a valid gift, there must be a taking possession under the gift; that the taking the team for the purpose of going for medicine was not necessarily a taking possession under the gift.

While there could have been no harm in giving the last part of this instruction, for the jury were entitled to determine from all of the circumstances whether there had been a delivery, and consequently delivery did not necessarily depend upon his driving the team to the

adjoining village to get medicine for his father, the first part of the instruction was correctly refused, for the reason that no new or formal act of delivery was necessary, the continuing possession and exercise of dominion being consistent with ownership.

Order affirmed.