Leeta I. CLARK, Administratrix of the Estate of Harold J. Hawkins, Deceased, Plaintiff-Appellant,

v.

Teri O'NEAL, Defendant-Respondent.

No. KCD 28407.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

James E. Baldwin, Lebanon, Robert F. Pyatt, Chillicothe, for plaintiff-appellant.

Lloyd A. Cleaveland, Gordon E. Cox, Chillicothe, for defendant-respondent.

Before SWOFFORD, P. J., and WASSERSTROM and TURNAGE, JJ.

WASSERSTROM, Judge.

This action to discover assets of a decedent's estate was originally filed in the Probate Court, pursuant to Section 473.340 RSMo 1969. Plaintiff, administratrix of the estate of Harold J. Hawkins, claimed that certain assets of the estate, namely thirteen certificates of deposit totaling $22,-000.00 and a note secured by a deed of trust in the amount of $34,080.00 payable to Hawkins, were being wrongfully detained from her by defendant. Defendant answered that she received the property in question from the decedent as a gift causa mortis. Issue having been joined and the probate judge disqualified, the cause was heard by the Circuit Court without a jury. From a judgment for defendant, plaintiff appeals. The sole issue is the sufficiency of the evidence to support the finding of a gift causa mortis.

The evidence showed that decedent, Harold J. Hawkins, was a widower sixty-five years of age and a long-time resident of Avalon, Missouri. His father had left him, his mother had died when he was three or four years old, and he had been raised by his grandmother and his uncle. Hawkins had a half-brother and two half-sisters but had had virtually no familial contact with them during his lifetime. He had stated on several occasions that he did not care anything about them and that they did not care anything about him.

Defendant Teri O'Neal was the niece of Hawkins' deceased wife, and while she was growing up had spent about as much time in his home as in her own. After she was married, Hawkins maintained frequent social contact with her and her husband, going to their house on numerous occasions for dinner, especially at Christmastime. Hawkins had stated several times that it was as though Teri was his own daughter and that he wanted her to have his property when he died. When he was admitted to the hospital in Chillicothe on June 16, 1973, he told the hospital authorities that Teri was the person to be contacted in case of emergency. He also requested a friend to inform Teri that he was in the hospital.

The testimony regarding the gift of the certificates of deposit and the note and deed of trust came principally from Merle O'Neal, Teri's husband. He testified that he first learned that Mr. Hawkins was ill on the Saturday next preceding the Monday on which he died. When Merle learned that Hawkins was ill, he and Teri went to the hospital in Chillicothe immediately. When they saw him, he was receiving oxygen and stated he did not think he was going to make it. Hawkins told them he was sorry he did not have a will made. Mr. Hawkins stated he did not know his half-brother or half-sisters and did not particularly care anything about them. He further stated that his sister in Lebanon, Missouri, Leeta Clark, was the only one that he cared anything about. He said he did not want his half-brother or half-sisters contacted. He stated that he only wanted to help Leeta Clark out a little bit. On Sunday, about 10:00 p. m., they went back to the hospital, Mr. Hawkins was in the intensive care unit and appeared very weak and struggling to keep his breath. Hawkins declared that he was having terrific pain and did not think he was going to live through it. He stated he did not feel like doing anything and did not know whether he was going to make it out of the hospital. He again said he was sorry he did not have things taken care of for Teri.

Merle and his wife stayed at the hospital all through the Sunday night of June 17. Merle went to work on Monday and was summoned to the hospital that afternoon about 3:00. Hawkins was still in intensive care. When they went in to see him, Hawkins asked whether Teri had the papers. She replied that she had not gotten them yet but that since Merle was there they could go get them. Hawkins inquired

whether they could find a key and get the papers and Teri said she could. Teri and Merle then went to Avalon. When they got to Avalon they stopped at Myrtle Osgood's house and asked her to go with them to Hawkins' house. The three of them went to Hawkins' house and went inside. Teri went to the desk and opened the top middle drawer. Right on top was a white envelope. She looked in it. They then left the house. As Teri looked into the envelope, Merle could see the thirteen certificates of deposit and the note and deed of trust. The three of them then left Hawkins' house, Mrs. Osgood was taken back to her house, and Merle and Teri then went back to the hospital.

When Teri took the envelope, she placed it in the side pocket of her purse. About three or four inches of the envelope were showing above the side pocket. After they arrived back at the hospital they went to Hawkins' room. Hawkins asked them whether they had the certificates and note, and Teri replied that she did. She held up her purse and said, "It's right here." Mr. Hawkins then replied, "Good, now you keep it, it's yours." Mr. Hawkins further stated at this time that he did not feel like writing. He said he did not think he would make it and that after his last pain he did not think he was going to live through it. He told Merle that the doctor had told him he had had two heart attacks. That night he died.

There was testimony from several witnesses, including the attending physician, that, although Hawkins was in pain, he was not confused nor was his mind fuzzy while he was in the hospital. To them, he appeared to be as mentally alert as he had always been and knew what he was doing and saying.

Plaintiff narrows the scope of inquiry on this appeal by limiting her attack to only two of the constituent elements required for a gift causa mortis. She states in her brief: "Thus, the issues before this court concerning the validity of the gift causa mortis are reduced to whether or not a sufficient delivery under the existing law together with donative intent has been established by the defendant's evidence."

■ However, as a preface to her discussion of these two requirements, plaintiff undertakes to develop the extent of the burden of proof resting on an alleged donee. In this respect, she insists that the donee must prove the gift "beyond a reasonable doubt," citing *Foley v. Harrison*, 233 Mo. 460, 136 S.W. 354 (1911), *Gillespie v. Ringhausen's Estate*, 364 S.W.2d 633 (Mo. App. 1963) and *In Re Petersen's Estate*, 295 S.W.2d 144 (Mo. 1956). The expression in the *Foley* opinion relied upon by plaintiff was explained away as dictum in a subsequent opinion in *McBride v. Mercantile-Commerce Bank & Trust Co.*, 330 Mo. 259, 48 S.W.2d 922, 927 (1932), and the utilization of the concept "beyond a reasonable doubt" was disapproved in *Matter of Estate of Passman*, 537 S.W.2d 380 (Mo. banc 1976).[1] A correct statement of the applicable rule is that the donee must prove the gift by evidence which is clear, cogent and convincing. *Matter of Passman, supra* l. c. 384; *McBride v. Mercantile-Commerce Bank & Trust Co., supra* ; *Genteman v. Sutter*, 215 S.W.2d 477 (Mo. 1948); *In Re Franz' Estate*, 344 Mo. 510, 127 S.W.2d 401 (1939).

■ Viewing the question of Hawkins' donative intent in light of the foregoing rule, there can be no doubt that he intended to make the gift, if the testimony of Merle O'Neal is believed. Plaintiff strives strenuously to discredit that testimony be pointing out minor alleged discrepancies, some

1. *Passman* arose in the context of a jury trial on an issue of whether a gift inter vivos had been made. The court's ruling on the form of the burden of proof instruction elucidates equally the nature of the burden of proof in a court tried case. Although the alleged gift in *Passman* was claimed as inter vivos, rather than causa mortis, the underlying problem was

the same because the gift there was first claimed after the death of the donor. With respect to the requisite weight of the evidence, "[t]he rule in relation to gifts causa mortis is the same as in relation to gifts inter vivos." *McBride v. Mercantile-Commerce Bank & Trust Co., supra.*

slight variance from a prior extra-judicial statement, and the financial interest of this witness inasmuch as he is the donee's husband. These matters all relate to credibility of the witness, as to which Rule 73.01–3(b) commends deference to the finding of the trial court who saw and heard the witness in person. Furthermore, the husband's testimony is consistent with the background facts and was corroborated by the testimony of such other witnesses as were available. It cannot be said that the evidence here on donative intent fails to measure up to the legal standard.[2]

█ As to the issue of delivery, "[n]o absolute rule can be laid down as to what will constitute a sufficient delivery to support a gift in all cases, for in each case the character of the delivery requisite to sustain the transaction as a gift will depend very largely on the nature of the subject matter of the gift and the situation and circumstances of the parties . . . it is not necessary that there be a manual delivery, or an actual tradition from hand to hand, where . . . constructive or symbolic delivery would be sufficient." 38 C.J.S. Gifts § 82, p. 902–3. Under the facts here, the instructions from the donor to go to his house, find the house key, enter the house and take possession of certain documents is not too far different from handing over the keys to a safe deposit box, which has been held a sufficient delivery numerous times. *Foley v. Harrison*, 233 Mo. 460, 136 S.W. 354 (1911); *McBride v. Mercantile-Commerce Bank & Trust Co.*, 330 Mo. 259, 48 S.W.2d 922 (1932). Even more directly to the point, actual physical delivery to the donee by the donor has been held unnecessary when the donee already had the property in possession at the time of the donative expression. *Gosney v. Costigan*, 326 Mo. 1215, 33 S.W.2d 947, 953 (1930); *In Re Franz' Estate, supra*; *In Re Schreihart's Estate*, 223 Wis. 218, 270 N.W. 71 (1936); *Davis v. Kuck*, 93 Minn. 262, 101 N.W. 165 (1904). And see *Carradine v. Estate of Carradine*, 58 Miss. 286 (1880), where digging up and retention of buried coins at the donor's direction was held to constitute a sufficient delivery.

The judgment is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. It therefore should be and is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

All concur.

---

**2.** Plaintiff makes a passing insinuation that the administration of drugs at 4:20 p. m. on the day of Hawkins' death "shows the possibility that the deceased's mind might have been affected at the time any alleged conversation might have taken place concerning the making of a gift causa mortis . . . ." No evidence appears in the record sufficient to rebut the presumption that Hawkins was competent and had a free will when he made this gift. 31A C.J.S. Evidence § 147, p. 361. Indeed, all the evidence on this matter was to the effect that Hawkins was not confused, was alert and knew what he was doing and saying.