81   425
d114  638
81   425
·e117 189

81   425
·f126  787

CASE 66—EQUITY—NOVEMBER 10, 1883.

# Stephenson's adm'r v. King, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The motive and intention to make the gift are equally well established.
2. The delivery by the decedent of the key of her desk, and the actual delivery to her mother of the letter of King containing a full description of the notes and bonds held by him as agent of the decedent, is a sufficient delivery to make the gift *causa mortis* complete.
3. The arbitrary rule requiring an assignment and delivery of the *identical thing*, in order to make such a gift valid, has been abandoned.

ANDERSON & ANDERSON AND A. P. HUMPHREY FOR APPELLANT.
No brief.

JAS. HARLAN, A. C. WILSON, AND DENNY & TOMLINSON FOR APPELLEES.

The delivery by Mrs. Stephenson to her mother of all the evidences of the *choses in action* in her possession was all she could make, and is fully sustained by the authorities as a *donatio causa mortis.* (5 Bush, 594; Merriwether v. Morrison, 78 Ky., 572; 11 R. I., 266; 31 Mar., 185; 63 Maine, 364; Williams' Ex'r, 691; Camp's Appeal, 36 Conn., 88; 40 *Ib.*, 512.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The intestate, M. L. Stephenson, was twice married. Her first husband was C. C. Storms, by whom she had one child, John Storms. She obtained a divorce from Storms in the year 1873, the father retaining the custody of his child, and afterwards married Stephenson, who is now dead.

Mrs. Stephenson died in July, 1881, and her first husband, the appellant Storms, administered upon her estate, and this controversy is between him, as administrator, and the appellee, Mrs. Evans, the mother of Mrs. Stephenson, in reference to a mortgage note for $5,500, and two Taylor county bonds. Mrs. Evans claims the note and bonds under a gift *causa mortis* from her daughter, alleged to have been made the day prior to her death, and the appellant Storms claims them to pay debts, and then for his son John, the child of the intestate. She owned also a house and lot in Lancaster, about which there is no dispute, it passing by descent to her only child.

Mrs. Stephenson at one time lived in the city of Louisville, and after the death of her last husband moved to Lancaster, Ky., in which town the first husband, Storms, and her son born of the marriage, resided. The mother was in bad health, and it seemed to be her desire to locate near her son, where she could occasionally see him. Her residence was but a few hundred yards from that of her former husband, and the son, in going to his place of business, passed by her house. She attempted to speak to him, but he seems not to have noticed her, and she remarked to a neighbor that he never looked towards her house, or seemed to think it had doors or windows. When she was dying, the ladies present sent a message to inform him of his mother's condition, and that it was his duty to come and

see her.  He told the girl to return and tell the ladies that he was *otherwise engaged.*  The reasons causing this strange conduct on the part of the son are not developed by the facts of the record, except the suggestion of counsel that but few of her most charitable neighbors recognized her in social life on account of her character and surroundings; and what the son ought to have done under such circumstances is not for this court to say, or made the subject of judicial inquiry in this case.

It becomes necessary to recite the facts connected with the conduct of the son towards the mother in determining the probability of the truth of statements made by a witness whose character for veracity has been attacked, and upon whose statements the gift to the mother is sought to be sustained.  The testimony would have to be of a more convincing character if the mother, who had been loved and respected by the son, without cause, had made such a disposition of her property as divested him of all interest in it. Here the entire absence of all affection by the son for the mother may have caused her to select another as the object of her bounty, and such being the case before us, the fact of her giving the property to her mother is neither unreasonable or unnatural.  Her mother seemed to be her constant companion, nursing her during her entire illness, and with that maternal instinct, however sad she may have been over her daughter's misfortunes, always ready to comfort her, and when death came, followed her to the grave.

The only question in this case is: Has the gift *causa mortis* been established?  The appellant's intestate, Mrs. Stephenson, when living in Louisville, selected the appellee John King as her agent, placed her money in his hands for investment, and when she died, King had the $5,500 note

and the Taylor county $500 bonds in his possession, the bonds payable to bearer, and the note indorsed in blank. The purpose on the part of Mrs. Stephenson to give this note and bonds to her mother is established by undoubted testimony. Mrs. Marrs, Eliza Carson, and Dr. Young all establish this fact, and there is no reason for discrediting any statement made by either of these witnesses.

The principal witness establishing the gift is one Henson, a servant in the family, and if he is to be believed, the defense is made out, and we think his testimony is strongly corroborated by those who are above suspicion. The gift was made to Mrs. Evans the day before her daughter died by an actual delivery of the only evidence she had of King's having possession of the note and bonds.

They were in the possession of King at Louisville, and no actual delivery of these evidences of debt could have been made. It seems she had written to King to know the condition of her accounts, and he responds on the 13th of April, 1880, in which he says: "I now have in my safe one promissory note belonging to you on W. P. Hahn and Mattie Hahn, dated February 13th, 1878, payable five years after date, for $5,500, with interest from maturity at eight per cent. per annum," and also recites the $500 Taylor county bonds, &c. This letter is signed by King, and said to be genuine by him when examined as a witness.

Henson, the principal witness, says he was living at Mrs. Stephenson's when she died. She told her mother that she gave her property to her; "told her about a week before she died she gave her everything; gave her the key at the time, and told her that everything that was there was hers; *the day before she died she requested her mother to bring her her writing desk. She brought the writing desk up to her*

*bedside, she opened the drawer, and gets out a paper and gave it to her mother, and told her mother that this paper was to show the property she had at Louisville, and to get her money on the paper. Her mother took the paper and put it in her pocket. It was fine note-paper, written on both sides. She took the keys. It was the key of the desk Mrs. Stephenson handed her mother. Her mother unlocked the desk and pulled the drawer open, and Mrs. Stephenson got the paper.* This paper is identified by the witness as the letter from King, in which a statement is made of the property in his possession belonging to Mrs. Stephenson. Dr. Young, the physician of Mrs. Stephenson, a man of intelligence in and out of his profession, says that on the morning of the day of her death he said something to her about the disposition of her property. She said: "I want my mother to have it all, after my debts are paid. I want my mother to have everything I have." And when told she was going to die, she said, "*it is all for my mother.*" Dr. Young says that after she made the remarks to him about her estate, Mrs. Marrs came into the room, and he told Mrs. Stephenson that he wanted her to tell Mrs. Marrs about the disposition of her property. She said: "*Doctor, that is all fixed; it is all my mother's,*" and repeated it several times. Mrs. Marrs testified to the same fact, and there is no escape from the conclusion that the gift was made, if there was such a delivery as the law requires to constitute a gift *causa mortis.*

There is nothing in Dr. Young's testimony but what conduces to corroborate that of Henson, that the intestate stated to the doctor, "*I want mother to have it all—it is all for mother*"—is not inconsistent with Henson's statement, for it is evident that the intestate knew the estate would pass to her, even could she make some other disposition of it, and

when the statement made to the doctor is considered, in con-
nection with that made by the intestate to Mrs. Marrs at the
doctor's instance, it is a complete corroboration of the wit-
ness, Henson.  She responded to Mrs. Marrs by saying,
"*Doctor, that is all fixed—all mother's.*"   She must have al-
luded to the gift made in the presence of Henson—that is,
the delivery *to her mother* of the key of the small desk, and
the actual delivery of the letter from King, which was, in
fact, a receipt evidencing the existence of the claims in con-
troversy then in King's possession.

It is evident that there must have been either an actual,
constructive, or symbolical delivery of the notes in contro-
versy to make it a gift *causa mortis.*   It is insisted by counsel
for the appellant that in order to make such a gift of a note
or bond, it must be delivered by passing manually from the
possession of one to the other; and from this veiw of the
question it follows that no delivery of the subject of the gift
can be made when the donor is out of possession, or when
he is unable, by reason of its being in the possession of his
agent, to obtain the possession at the moment the gift is
made.    If this be the correct rule, no gift *causa mortis* can be
made of the thing, because it is not in the actual possession
of the donor.    Cases have been cited sustaining the position
assumed by counsel.  (Spratly v. Wilson, note 1st, Williams
on Ex'rs;  Case v. Drennon, 1 R. I.; Stephens v. Stephens,
2 How.)   This rule, we think, has been greatly modified by
the more modern decisions on the subject.    It is that the de-
livery must be according to the nature of the thing, and
usually that means according to the physical nature of the
thing to be delivered, such as the bulk or weight, and does
not refer to the locality of the thing.   Under the ancient
doctrine, if the thing given was a chose in action, the law

required an assignment, or something equivalent in the form of a ·writing, and the transfer must be actually executed. This is the rule laid down by Kent in his Commentaries, vol. 2. Now, will it be insisted, under the more modern authorities, that an actual delivery of the chose in action to the donee will not constitute a gift? We think not. And when the donor delivered that which is the evidence of his right to property in the possession of his agent, or his attorney, and when actual delivery of the thing itself is impossible at the time by reason of the possession being in another, we see no ·reason why there may not be such a delivery of the evidence of the right to the thing as is required to constitute a valid gift *causa mortis*. The possession of the agent is the possession of his principal. King was in Louisville with the notes and bonds in his possession, investing them as the bailee or agent of the intestate. She delivered to her mother the receipt of King, or the letter she held, which is in effect a receipt, saying that it is a gift to her, and she must go and get the money. The delivery of a bill of lading, or a warehouse receipt, would have passed the right; but it is argued in such a case that the writing is the representative of the thing itself—a symbolic delivery of the title and possession—while a note, or the delivery of it, can not pass in such a way. If the delivery of a debt or chose in action consists in the assignment with notice, as decided in a case from 2 N. H., referred to by counsel, his position is well taken; but such is not the law, nor do we perceive any reason for recognizing such a rule.

In the case of Stephens v. Stephens (2 How.) the dying wife said to her husband, "You may have all the money." It appears that the money she owned was represented by two notes, one of which was in the bureau in her husband's

house, and therefore was accessible to him, and the other pledged to some one as collateral security—it was held that as to the note in the husband's house, which was in effect already in the donee's possession, the gift was good, but as to the note pledged as collateral security the gift was invalid. This is also a case relied on by appellant's counsel. Suppose there had been in the bureau the receipt of an attorney for the collection of this note, and the wife, with the power to dispose of it, had handed to the mother the receipt of the attorney, saying that she gave her the note, why would not that have passed all the right to the mother? Suppose she had given her an order for the note, would not the gift have been valid? and, if so, why is not the delivery of the receipt, or the written evidence of the donor's right to the note then in the possession of the attorney, sufficient? A verbal statement that she gives the note is not sufficient, for there is nothing delivered representing or evidencing her right. In the case of Simpson v. Thompson, reported in 2 Metcalfe, this court held that the more modern doctrine was that the beneficial interest in a note passed by delivery. There, it is true, the note was actually delivered, but without an assignment, but it shows the modification of the former ruling on the subject. The older authorities maintained that a chose in action must pass by an assignment, and a delivery without it did not constitute a gift *causa mortis*, and, that being the case, no receipt or other writing evidencing the right to the note could operate as a transfer of the beneficial interest or possession so as to constitute a valid gift. In passing the receipt evidencing the right of property and the possession with the agent, the donor parts with such dominion over the note as makes the gift valid. It is true the legal title is in the donor or her

representative, and a payment by the agent, or the debtor, to the donor, or her representative, without notice, would defeat a recovery by the donee, but such would be the case when there had been no assignment of the note, or a payment without notice of the transfer.

This court, in Ashbrook v. Ryan, adm'r, held that the delivery of the notes without assignment perfected the gift, and it is there further held that the delivery of the *pass-book* did not give the right to the money in bank. Why it did not is not stated, but if equivalent to a certificate of deposit, we see no reason why it should not have been a complete gift.

What evidence the pass-book contains of the deposit in that case does not appear. If an ordinary pass-book, and it must be so inferred, it was an acknowledgment by the bank that the donor had to his credit in the bank that much money, and when actually delivered we can not see why it did not pass the right. This court, in the case of Southerland v. Southerland, reported in 5 Bush, recognized a valid gift *causa mortis*, when the husband, a few days before he died, called to his bedside Houston, who held the note, and said to him "that he wanted his wife to have the note." After this Houston brought the note to the wife, saying that the intestate had given it to her. There neither was, or could have been, a delivery of the note at the time, as the record states, yet the court held it a valid gift, and that the party holding the note, Houston, was from that time holding it as a trustee for the wife. In the case of Merriwether v. Morrison, reported in 78 Kentucky, the intestate indorsed on the note: "I transfer this note as a gift to Miss Agnes Morrison." A few weeks before the testator died he called the donee to his bedside and told her he had given the notes to Dr. Merriwether for her. He told Dr. Merriwether to put them in the desk of

the intestate, and after his death to give them to Miss Morrison.
Witness did so — placed the notes in the desk in the room of
the intestate, and handed the key back to intestate, and saw
them no more until after his death.    The gift was held to be
valid.    In Ellis v. Secor, 31 Mich., the facts are:    On a
slate by the bedside of the intestate, who was found dead,
was in her hand-writing, and signed: "I wish Dr. L. to
take possession of all, both personal, real, and mixed.    I
am so sick I believe I shall die; look in valise."    In this
valise was found a memoranda, written by her, directing
Dr. L. to take all of her property.    The court said: "We
think it clear that Rachel Hill did all that she could to cre-
ate a gift *causa mortis*, and fully intended it, and that her
written declaration should prevail, as a valid appointment to
the uses indicated, as fully as if that had been a manual
delivery of the securities."  In Hill v. Stevenson, 63 Maine,
M had deposited money in bank, handed his pass-book
to C, at the same time saying to him that he gave the
money in that book to H and I, and requested him to keep
the book, and, after his death, to divide the money between
them.    It was held to be a valid gift of money to H and I.

In Clain v. Keen, reported in 4 Leigh, Elisha Keen
devised the whole of his estate to his mother, Elizabeth
Keen, who was also his executrix.    The devisee, Elizabeth,
being entitled to a bond which had been executed to her
testator, which bond was then in a suit, told the plaintiff
"that he might have the bond, and gave him the attorney's
receipt for it"    It was insisted that there was no such de-
livery as rendered the gift valid, and this was the only issue.
The court said: "There are many things of which actual
manual tradition can not be made, either from their nature
or situation at the time.    It is not the intention of the law

to take from the owner the power of giving these.    It merely requires that he shall do what, under the circumstances, will, in reason, be equivalent to an actual delivery." The gift was held valid.    In the present case the intention to make the gift, long before it was made, is established by undoubted testimony.    The motive for making it is equally as well established, and the delivery of the key of the desk, and the actual delivery of the letter from King containing a full description of the note and bonds held by the agent, the only evidence the intestate had of his possession for her use, is a sufficient delivery to make the gift complete.    No other delivery could have been made, and the arbitrary rule such as formerly existed with reference to the delivery of choses in action, requiring an assignment and delivery of *the identical thing* in order to make such a gift valid, having long since been abandoned, there is no reason why the intention to give, with the actual delivery of the written evidence of the right to the thing, although in the possession of another, under the belief of the donor that it perfects the gift, should not be held to constitute a valid gift *causa mortis*.

The chancellor below acted properly in giving to the mother of Mrs. Stephenson the note and bonds in controversy, subject to the rights of creditors.

Judgment affirmed.