WILHELMINA HAGEMANN, Admx.

*v.*

MICHAEL HAGEMANN.

*Opinion filed October 26, 1903.*

1. GIFTS—*what establishes an inter vivos gift.* An *inter vivos* gift of notes is established by proof that the donor placed the notes in an envelope marked with the donee's name, as owner, executed a writing importing a present transfer and delivery of the notes, and delivered the key to the safety deposit box where the notes were to be kept, to the donee, who subsequently took them into his possession.

2. SAME—*effect of re-possession of notes by donor.* An *inter vivos* gift of notes is not defeated by the fact that the donor took them from the possession of the donee because he "wanted to see something on them" and with the promise to return them, which he failed to do before his death.

*Hagemann* v. *Hagemann,* 102 Ill. App. 479, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This case began in the probate court of Cook county as a claim of Michael Hagemann, the appellee, against the estate of his deceased brother, Fritz Hagemann, praying, in the alternative, for the payment to him of the value of or the delivery to him of certain specific promissory notes described in said claim and in the inventory filed in said estate, aggregating $4000, and enumerated by the names of the makers, as follows: Wartzeck note, $1250; second Wartzeck note, $550; Glup note, $1000; Reimer note, $1000; also another Wartzeck note for $200, which was not listed in the inventory filed in the estate. The probate court dismissed the claim, and the claimant appealed to the circuit court, which also dismissed the claim "for want of equity or legal right." Claimant then appealed to the Appellate Court for the First District,

and the cause was assigned to the Branch Appellate
Court. That court found that Fritz Hagemann, in his
lifetime, made a gift *inter vivos* to Michael of notes to the
amount of $4000, which had been put in a certain envel-
ope marked "Notes owned by Michael Hagemann.—Fritz
Hagemann," and described in the opinion of the court,
but on the question of identity of the particular notes
placed in the envelope said Appellate Court reversed the
case and remanded the same, with specific directions "to
ascertain, as nearly as practicable, and determine, what
notes came into the possession of appellant [Michael]
which were in said envelope and which deceased obtained
from appellant as stated, and to decree that such notes,
or the proceeds of such of them as have been paid, if any,
be delivered and paid to appellant," Michael. The ad-
ministratrix then prayed an appeal to this court, which
was allowed but dismissed by this court as being pre-
mature. (*Hagemann* v. *Hagemann*, 188 Ill. 363.) The cause
having been re-docketed in the circuit court, on January
14, 1901, reference was made to the master by an order
directing him "to take proofs, and to ascertain, as nearly
as practicable, and determine from the proofs so taken,
together with the evidence now of record in the cause,
what notes came into the possession of Michael Hage-
mann which were in the envelope mentioned in the opin-
ion of the Appellate Court; and also which, if any, of said
notes have been paid, and also what proceeds of any of
said notes have come to the possession of the adminis-
tratrix, Wilhelmina Hagemann, and to report such proofs,
together with his conclusions thereon, to this court."
The master did as directed, and in his report found that
the notes described in the claim of appellee, in so far as
said notes appear in the inventory filed in the estate of
Fritz Hagemann, are the identical notes which were put
into the envelope mentioned in the opinion and judgment
of the Appellate Court, but also finding that appellee
had failed to prove his title to the $200 Wartzeck note,

and that "after the death of Fritz Hagemann said $200 note was held and owned by an outside party." The present appellant then appealed to the Appellate Court from a judgment of the circuit court approving the findings of the master. The Appellate Court having affirmed the judgment of the lower court, this appeal is brought.

Appellee is a brother of Fritz Hagemann, deceased, and is a laboring man without financial resources. Deceased was a bricklayer, then a contractor, and, though in poor health most of his life, had been financially successful. In October, 1878, he was married to the administratrix, but their married life was unpleasant. The two brothers had always been friendly, and appellee gave deceased much assistance during times of illness. On October 5, 1896, these two brothers went to the office of William E. Hatterman, who was in the broker business, and Fritz Hagemann executed the following paper:

"CHICAGO, *October 5, 1896.*

"This is to certify that in consideration of one ($1.00) dollar I have this day assigned and transferred to my brother, Michael Hagemann, notes secured by trust deeds, being for the total sum of four thousand ($4000) dollars. Said notes are to be found in an envelope or package which is marked 'Notes owned by Michael Hagemann,' which may be found in my safety box in the Hatterman Safety Deposit Vault Company, Chicago, to which box my said brother has access.

FRITZ HAGEMANN."

This paper was left with Mr. Hatterman without specific directions. Deceased selected from his papers notes supposed to be of the amount of $4000, put them into an envelope separate from his other papers, wrote upon the envelope "Notes owned by Michael Hagemann," and Fritz Hagemann signed his name thereto. The envelope containing the notes was then put into box No. 448 of the Hatterman deposit vault. This box had been rented by Fritz Hagemann since February 23, 1894. June 23, 1896, appellee was appointed by his brother, Fritz, his representative, "to have access to and control of the

contents of safe No. 448, in the vaults of the Hatterman Safety Deposit Company." On March 1, 1897, deceased rented box No. 835. Three or four weeks after the transaction of October 5, 1896, Fritz gave Michael a key to box No. 448, in which the notes in controversy had been placed. On May 27, 1897, Michael visited box No. 448, and the evidence indicates he at that time took these notes to his own house, where they remained until about two weeks before Fritz's death, when Fritz came to Michael's house and got them, saying he "wanted to see something on them," and promised to give them back. Charles Reimer testifies that several times he paid the interest on his notes to Michael, the notes being at Michael's house, the last time only a short time before the death of Fritz. He also states that Fritz had told him that he should pay the interest to Mike, so that his wife would not know it, and that after he (Fritz) died the rest belonged to Mike. Fritz died September 1, 1897, with the notes in question still in his possession. Michael immediately began to search for the notes, and on September 2 went to box No. 448 to see if they had been returned there, but found the box empty. He then asked Fritz's widow, the administratrix, several times about them, but she professed not to know anything about them. When the inventory of Fritz's estate was filed in probate these notes were inventoried, and appellee then made written demand for them, and the administratrix refused to give them up, and this proceeding was begun. Hatterman states that on October 5, 1896, at the time the notes are claimed to have been given to appellee, Fritz Hagemann stated that he gave them as a present.

The decree of the trial court found "that said Fritz Hagemann, deceased, did in his lifetime transfer, assign and deliver, as a full and complete gift *inter vivos* to Michael Hagemann, the complainant, notes secured by trust deeds, being for the total sum of $4000, or about that sum; that said notes were put into an envelope,

which envelope was endorsed 'Notes owned by Michael Hagemann,' which endorsement was signed, 'Fritz Hagemann;' that after title to said notes had fully vested in Michael Hagemann, the complainant, said notes came into the possession of said Fritz Hagemann, deceased, and were in his possession at the time of his death, but without any act or statement by the complainant tending to show an intention on his part to transfer the title to said notes, and that the title of complainant to said notes was not thereby destroyed or impaired."

HENRY UTPATEL, (ERNEST SAUNDERS, of counsel,) for appellant.

F. M. BURWASH, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellant assigns sixteen errors, but the only contentions argued are, that the transaction had between Fritz Hagemann and appellee at the time the written instrument of October 5, set out in the statement, was executed, does not constitute a sale, as there was no consideration, neither did said transaction constitute a gift *inter vivos* or *causa mortis*, and that the notes in question have never been sufficiently identified as the notes with reference to which the paper of October 5 was executed.

We think it clear that the intention of the donor, in cases of this character, is a controlling factor, and from the facts herein we are of the opinion that the chancellor was justified in decreeing that Fritz Hagemann "did in his lifetime transfer, assign and deliver, as a full and complete gift *inter vivos* to Michael Hagemann," the notes, etc.; "that said notes were put into an envelope, which envelope was endorsed 'Notes owned by Michael Hagemann,' which endorsement was signed 'Fritz Hagemann.'" We are of the opinion that the above findings are in accord with the weight of the evidence and were properly

sustained by the Appellate Court. Michael Hagemann was poor; the donor, his brother, well to do. The brothers had always been friendly. Michael had assisted his brother during times of illness. Mr. Hatterman, in whose presence the transaction of October 5, 1896, took place, states that deceased said that he gave the notes in question to Michael. The language of the writing executed at that time imports a transfer and delivery. Michael was given a key to the box containing the said notes. This alone has been held to be a good symbolical delivery. (*Stephenson* v. *King*, 81 Ky. 425; *Telford* v. *Patton*, 144 Ill. 611.) Michael could, and the evidence shows that he did, go and take the said envelope from the box in the vault and take it to his home, and the maker of one of the notes stated that he saw it there several times when he paid his interest, the last time being only a short time before the death of the donor. The witness Reimer testified that deceased told him that the notes belonged to Michael. The fact that the deceased took the notes to his house for some purpose, but without any manifest intention of re-investing himself with the title to them, does not militate against the theory of ownership by appellee. (*Martin* v. *Martin*, 170 Ill. 18.) If there was ever a valid delivery of the notes to appellee, the fact that the donor was again found to be in possession of the notes could have no tendency to establish title in him, especially where there are no circumstances showing that such act manifested an expression or intention on the part of the donor that he had never relinquished control or ownership of the notes.

Other grounds are urged by appellee for affirming this case, but it is not necessary to consider them, as, for the reason already stated, we are of the opinion that the judgment of the Appellate Court should be affirmed.

*Judgment affirmed.*