MARY ROSENAU, Bertha McDowell and Della Boisner, Appellants,
v. MERCHANTS NATIONAL BANK OF DICKINSON, a
Corporation, Respondent.

and

A. W. SADOWSKY, as Administrator of the Estate of John Jeschke,
Deceased, Intervener.

(— A.L.R. —, 216 N. W. 335.)

**Gifts — unindorsed certificate of deposit may be subject of gift causa mortis.**
1. A certificate of deposit payable to a designated payee or order and not indorsed may be the subject of a gift causa mortis.

**Gifts — showing intention to make gift causa mortis.**
2. Where the owner of a certificate of deposit, two days before his death, realizing that he was in peril of death, caused to be delivered to a third person a key that would enable such person to take the certificate into his possession, and where he directed such person to take the certificate and keep it safe, saying that it was for his girls, there was a sufficient manifestation of a present intention to make a gift causa mortis.

**Gifts — subject matter of gift causa mortis may be delivered to third person.**
3. The delivery of the subject matter of a gift causa mortis may be made to a third person, and it is held, for the reasons stated in the opinion, that the subject matter was delivered to the third person to hold for the donee and not to hold as agent for the donor.

Opinion filed November 26, 1927.

Annotation.—(1) Check or certificate of deposit as subject of gift by payee or indorsee thereof, see annotation in 40 A.L.R. 508; 12 R. C. L. 966; 2 R. C. L. Supp. 1520; 6 R. C. L. Supp. 735.

(2) As to effect of delivery of subject matter to third to constitute gift causa mortis, see annotation in 3 A.L.R. 902; 12 R. C. L. 966; 2 R. C. L. Supp. 1520; 6 R. C. L. Supp. 735.

Gifts, 28 C. J. § 30 p. 640 n. 49; § 39 p. 645 n. 10; § 106 p. 692 n. 46; § 109 p. 694 n. 66; § 125 p. 699 n. 34; § 132 p. 702 n. 71; § 140 p. 704 n. 17.

Appeal from the District Court of Stark County, *Berry,* **J.** Reversed and remanded.

*C. H. Starke,* for appellants.

"The findings of the trial court are presumed to be correct and the appellant has the burden of showing that the findings are without support in or contrary to the preponderance of the evidence." Baird v. Abraham, 55 N. D. 348, 213 N. W. 733.

"Express findings are required on every material issue raised by the pleadings, and if any are left unfound it is ground for reversal." Gull River Lumber Co. v. School Dist. 1 N. D. 509.

"The statute should be strictly construed." Braithwaite v. Aiken, 2 N. D. 57.

"No particular form of words is necessary to give effect to the transaction if the intention of the donor sufficiently appears, and the intention to give is either accompanied with or followed by acts requisite to constitute a valid delivery." 28 C. J. 687 (97).

"If the words accompanying the delivery of the thing can be said to be expressive of a gift, and, in the light of the circumstances, consistent with the intention to give, the execution of the gift is established." Messor v. Bank (Cal.) 160 Pac. 567.

"The person to whom delivery is thus made will be presumed in the absence of countervailing circumstances to take the property as the trustee of the intended donee and not as the agent of the donor." 28 C. J. 694 (109).

"The donor of a valuable in transferring it to the donee and using the expression 'to be yours in case of my death' will not change the transaction into a testamentary disposition." Page v. Lewis (Va.) 18 L.R.A. 170.

"It will be presumed, however, that the person to whom delivery of a gift causa mortis is made takes as a trustee for the donee." 12 R. C. L. 959.

*Crawford, Cain & Burnett,* for respondent.

"No consideration is necessary to support a gift. Words alone are not sufficient to constitute a gift, because mere words, unaccompanied by delivery, could only be a promise, and there being no consideration, the promise could not be enforced." 12 R. C. L. 932 (10); Ramsdell v. Warner, 48 N. D. 96, 183 N. W. 281.

"Strictly speaking, all gifts between living persons, whether made in expectation of death or not, are of course gifts inter vivos, but a gift causa mortis, while resembling what is technically known as a gift inter vivos in some respects, presents also several important points of difference." 28 C. J. 621 (5).

"A gift made with intent that it shall take effect immediately and irrevocably, and fully executed by complete and unconditional delivery, is good and valid as a gift inter vivos, although at the time the donor is in extremis, and dies soon after." 28 C. J. 622 (6b).

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos." 28 C. J. 627 (15).

"Gifts inter vivos have no reference to the future, and go into immediate and absolute effect, and a gift of property to take effect at some future date or at the death of the donor, is void." 28 C. J. 647 (42).

"To constitute a valid gift causa mortis the gift must be made in view of the donor's impending death, and the donor must die of the disorder or peril, and there must be a delivery of the thing given. In addition to this, there must be a donor competent to make the gift, an intent on his part to do so, and an acceptance by the donee." 28 C. J. 687 (97).

"Without an act of delivery, an oral disposition of property in contemplation of death can be sustained only as a nuncupative will, and in the manner and with the limitations provided for such wills. 28 C. J. 689 (103).

"A delivery of property sufficient to create a gift causa mortis must be such that the donor parts with all present control and dominion over it." 12 R. C. L. 959 (34).

*W. F. Blume,* for intervener.

BIRDZELL, Ch. J. This action was brought by the plaintiffs as owners and holders of a certificate of deposit issued by the defendant, the

Merchants National Bank of Dickinson, to one John Jeschke. The de-
fendant answered to the effect that it had no interest in the certificate
and that it was ready, willing and able to pay the same to the payee,
or to any person to whom the certificate was properly and legally in-
dorsed and delivered by the payee, or to a legal representative, or to
the heirs; but it alleged that the payee of the certificate had not indorsed
it and that he was deceased. The administrator of the payee inter-
vened and filed a separate answer, alleging that the certificate in ques-
tion was never indorsed; that the same constituted a part of the assets
of the estate of John Jeschke, deceased, and that it was wrongfully kept
or claimed by the plaintiffs. There are further allegations with refer-
ence to the inventory of the estate to the effect that the property, aside
from the certificate of deposit, is insufficient to meet the expenses of
burial, funeral and administration. At the conclusion of the testimony
the jury was excused and the issues were submitted to the court for
decision. The court held that the certificate of deposit was the property
of the estate of John Jeschke, deceased, and ordered a judgment of dis-
missal against the plaintiffs. From this judgment the plaintiffs have
appealed, presenting two principal questions for decision: first, they
contend that the evidence establishes a valid gift causa mortis to the
plaintiffs of the certificate of deposit; and, second, that the court erred
in excluding testimony of one of the plaintiffs as to conversations had
with the deceased.

The record presents the following facts: John Jeschke, the deceased,
was the owner of a certificate of deposit in the Merchants National Bank
of Dickinson for $1,700. For about two weeks prior to October 24,
1925, the date of his death, he was ill in St. Joseph's Hospital at Dickin-
son. About two days prior to his death one George Berzell, a friend of
Jeschke, called to see him. They conversed in German. Jeschke told
Berzell that he felt pretty sick and the latter told Jeschke he was more
sick than he thought he was, that he should get his papers in shape. He
said "I have got this gold, this money, over at the bank. That is for my
girls, for my daughters." He asked Berzell to take the paper out of his
suit case for safe-keeping and the latter told him that there ought to be
something in writing; whereupon Jeschke said "I will be all right in a
couple of days and then I can write, then I will state it out further."
He sent for the key to the shop, but, on account of services in the chapel,

the Sister could not bring the key just then; but he said he would have it sent down the next day. Jeschke told him about his prayer book that he wanted out of the suit case. The next day he sent the key down and Berzell went and took the certificate of deposit out of the suit case and put it in his safe. After the funeral he turned it over to the daughters of the deceased, the plaintiffs in this action. The exact expression used by the deceased, translated into English, was "I have this money in the bank and the paper is in my suit case. That is for my daughters." He told Berzell to take out the envelope with the certificate in it, to keep it in a safe place. He didn't say that he would make some writing in regard to this. He said there were some different investments that he wanted to put in writing—about some little stock, some place. The witness didn't remember the other items he mentioned. He intended to come down later and get his papers in shape. This was two or three days prior to his death. He expected to be down to his shop in a couple of days. The witness Berzell further said "Well, I brought up to him about his sickness. I asked him that he should look after his matters on account of he was a more sick man than he thought he was. Then we talked about his business and such things and then after a while he came to this money business, this money question. He was telling me, he said 'The little cash I have got, I have it here in the hospital. The little cash I have, I have it right here.' And he said 'I have this money in the bank' he said. And he said 'My girls have been kind to me and helped me' he said, 'and I want you, I have my papers down there. I want you to get this and keep it in a safe place. That is for my girls.' Then we talked on about different matters. . . . The Court: Did he tell you to give that to the girls or did he not? Answer: He said 'That is for my girls,' in English. The Court: He said 'That is for my girls.' He did not tell you to give it to the girls? Answer: No, he did not tell me to give it to the girls. The Court: He just told you to keep it safe? Answer: He told me to keep it safe. The Court: He said something about later on that he was going to do something. What was that? Answer: I hold him about his other items, that the people were coming there every day for their shoes and stuff and wanted to pay their bills and he ought to have somebody there, and he said 'Let it go for two days or a couple of days. I will be down and get everything in

order.' " The daughters of the deceased were nonresidents of Dickinson and were not there during his illness.

This testimony is undisputed and no reason is advanced as to why it should not be given full credit. A fair construction of this evidence, we believe, justifies the statement that the deceased about two days before his death desired to make a gift to his daughters of the only property he owned of substantial value. His daughters were not present and to carry out this desire he took the steps necessary to put into the possession of his friend and confidant the evidence of ownership of that property, a chose in action, without which it could not readily be reduced to possession. He parted with the possession of the certificate absolutely, intending that his daughters should have it in case of his death. At the time of the transaction in question, the deceased realized that he was in peril of death but did not contemplate that the end would come as soon as it did; but, on the contrary, was hopeful that he might again be able to go to his place of business and get things in order and make provision regarding his other property. There is nothing to indicate that he contemplated any further steps by way of effecting his intention to give the certificate of deposit to his daughters; unless, perhaps, it be the execution of a writing that would better evidence the intention in this direction which he had previously expressed.

Under these facts we have to determine whether or not there was a valid gift causa mortis. This question, on the record here, depends upon the answer to three questions: (1) Was the subject-matter one that was legally appropriate for a gift causa mortis? (2) Was there a sufficient manifestation of a present intention to make a gift? (3) Was there a sufficient delivery?

The property in question is a chose in action evidenced by a negotiable instrument payable to the order of the deceased and not indorsed. By the early common law choses in action, being nonassignable, were necessarily incapable of transfer by way of gift. 28 C. J. 645; 1 Harvard L. Rev. 6; 3 Harvard L. Rev. 340, 341; 2 Schouler, Pers. Prop. 2d ed. § 72. But with the modification of the common law, which recognized a right in the assignee to enforce a chose in action, the underlying reason which prevented a gift of such property from being operative ceased to exist and it came to be recognized that this species of property could be transferred from one person to another by any for-

mality which was sufficient to pass either the legal or the equitable title. Ames, Cases on Trusts, 145. Hence, bonds, notes and other instruments payable to bearer and transferable by delivery became as appropriate subjects of gifts causa mortis as any other species of property similarly transferable. Drury v. Smith, 1 P. Wms. 405, 24 Eng. Reprint, 446; Duffield v. Elwes, 1 Bligh, N. R. 497, 4 Eng. Reprint, 959; Re Dillon (1890) L. R. 44 Ch. Div. 76—C. A.; Snellgrove v. Baily, 3 Atk. 214, 26 Eng. Reprint, 924. But, where an instrument payable to the order of a specified person was not indorsed, the mere delivery of the instrument to the donee would not constitute him the holder in the full sense, nor make him the owner of the legal title. Neither would he have the right to acquire the legal title as would a transferee for value. Comp. Laws 1913, § 6934; Neg. Inst. Law, § 49. He would, according to the English law, have at most a mere right to possess the instrument accompanied by a revocable power of attorney to sue in the name of the donor; but, as death would revoke the power of attorney, he could not sue after this event happened and the gift would fail. Miller v. Miller, 3 P. Wms. 356, 24 Eng. Reprint, 1099. See Bradley v. Hunt, 5 Gill & J. 54, 23 Am. Dec. 597. Under this view such a chose was not regarded as a proper subject matter for a gift causa mortis, and it would likewise fail as a gift inter vivos, where no power of attorney was implied giving the right to use the donor's name in a suit to enforce it.

But it is held otherwise in Turpin v. Thompson, 2 Met. (Ky.) 420; Grover v. Grover, 24 Pick. 261, 35 Am. Dec. 319, and in Wing v. Merchant, 57 Me. 383. And see 23 Am. Dec. 601–603, notes; 99 Am. St. Rep. pp. 908, 909; 2 Schouler, Pers. Prop. 2d ed. § 76; Brown v. Brown, 18 Conn. 410, 46 Am. Dec. 328. The reluctance of the English courts to lend assistance to a volunteer or a mere donee, in favor of whom a donor had manifested an unqualified intention to bestow property, was, however, more easily overcome in support of gifts causa mortis of choses in action payable to bearer. Snellgrove v. Baily, supra; Duffield v. Elwes, 1 Bligh. N. S. 497, 4 Eng. Reprint, 959. In this country the leading jurisdictions refused to recognize any distinction in this respect between gifts causa mortis and gifts inter vivos and, likewise, the validity of any distinction between the gift of a chose in action payable

56 N. Dak.—9.

to bearer and one payable to order and not indorsed, with the result that the donee in each instance is regarded as the beneficial owner and as having the right to enforce the obligation in his favor.    Basket v. Hassell, 107 U. S. 602, 27 L. ed. 500, 2 Sup. Ct. Rep. 415; Brown v. Brown, and Wing v. Merchant, supra; Grover v. Grover, 24 Pick. 261, 35 Am. Dec. 319; Turpin v. Thompson, supra; Ashbrook v. Ryon, 2 Bush, 228, 92 Am. Dec. 481; Stephenson v. King, 81 Ky. 425, 50 Am. Rep. 172; Thomas v. Lewis (Page v. Lewis) 89 Va. 1, 18 L.R.A. 170, 37 Am. St. Rep. 848, 15 S. E. 389, and the numerous authorities cited in the notes in 23 Am. Dec. and 99 Am. St. Rep. supra.    Hence, we conclude that the certificate of deposit was a proper subject for a gift causa mortis.

Was there sufficient manifestation of present intention to make a gift?    This is more a question of fact than of law.    We are of the opinion that, in his conversation with Berzell, the deceased manifested an unequivocal intention to vest in his daughters all his right to the money represented by the certificate of deposit.    He realized, of course, that as they were not present he could not place it in their physical possession. He indicated where it was kept.    He said it was for his girls and he turned the key over to Berzell and directed him to get the certificate and keep it in a safe place.    He took these steps after he was impressed with the seriousness of his condition and with the fact that he had not as yet taken any steps to effect a disposition of his property.    In all the circumstances what he said and did was, in our opinion, a clear manifestation of a present intention to vest in his daughters all of his right to the property in question, and the mere fact that he contemplated some further steps by way of placing his affairs in shape, in case he should again be able to be about, does not argue against the finality of his intention as manifested by what he said and did in regard to the certificate of deposit.    It is, rather, an expression of what he hoped to do further in a contingency that in fact never happened.

Section 5541 of the Compiled Laws of 1913 provides:

"A gift in view of death is one which is made in contemplation, fear or peril of death and with intent that it shall take effect only in case of the death of the giver.".

And § 5542 provides:

"A gift made during the last illness of the giver or under circum-

stances which would naturally impress him with an expectation of speedy death is presumed to be a gift in view of death." We are of the opinion that the facts in this case show a gift causa mortis within the statute.

Was there a sufficient delivery? The beneficiaries in the instant case were not present, so an actual delivery to them was impossible. There was, however, a complete delivery to Berzell. The donor had turned over the key with a direction that the certificate of deposit be taken into the possession of Berzell, to be kept by him in a safe place— not kept in a safe place for the donor but for the donees. True, in case of recovery from the illness, the gift would be revoked; or, under § 5543 of the Compiled Laws of 1913, the gift might have been revoked by the testator at any time. But the testator did not recover and there is no evidence indicating any attempted revocation before his death. There is nothing, therefore, to qualify the effect of the delivery to a third person. The law on the subject of delivery to a third person is thus stated in Corpus Juris (28 C. J. 639):

"While there must be a delivery and acceptance to complete the gift, it does not necessarily follow that the delivery must be made directly to the donee, but the delivery may be to a third person for the benefit of the donee. Where a delivery is thus made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto, as disclosed by the evidence. If the property remains under the control of the donor, although in the keeping of the third person, and the latter is subject to his further direction as to its final disposition, then his relation is that of an agent. If, however, the property is delivered by the donor with intention that the present title and ownership shall pass to the donee and such intention is carried into effect by the language employed and the things done in relation thereto, then the gift is executed and the third person is a trustee for the donee. . . .

"Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circum-

stances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which, in such case, is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee."

The authorities supporting the text are so numerous and the principles enunciated so well established that it would serve no useful purpose to cite specific cases showing where the line of demarcation is drawn between acts and expressions which constitute the third person an agent of the donor on the one hand or a trustee for the donee on the other. We are clearly of the opinion that in the instant case the facts and circumstances show an intention on the part of the donor to regard the third person as a trustee for the donee, rather than as his own agent. Since he was engaged in making a disposition of the property in question that would be beneficial to his daughters, he must have appreciated the fact that they were not present, and there is nothing to indicate that he anticipated that they would be present before his illness should result fatally. Hence, he was contemplating that the third person would necessarily hold the certificate of deposit until after his death and, since death would revoke the agency, we cannot assume that he deliberately elected to do the thing which would defeat his own intention. There was nothing equivocal in his expression, nor in his acts in carrying out his expression. The third person was to do no act beneficial to the deceased, nor was he to look to him for any further direction. It must be assumed, therefore, that he was engaging the third party to act in a capacity that would make his intention effective, rather than defeat it. We are of the opinion that the delivery was complete.

It is suggested in the briefs that, in case this court should hold that there was a valid gift causa mortis, it should, in the interest of avoiding further litigation, consider whether or not the gift is subject to claims of creditors, particularly creditors whose claims arose subsequently on account of funeral expenses, costs of administration and the like. It is pointed out that the estate, aside from the certificate of deposit in question, is insolvent. Section 5545 of the Compiled Laws provides: "A gift in view of death must be treated as a legacy so far as relates only to the creditors of the giver." On account of its quasi testamentary character, the similarity of a gift causa mortis to a legacy

has often been remarked. We know of no authority, and none is cited in the briefs, which is decisive of the exact question submitted. Regarding it as a question of first impression, we think the view that carries out the analogy to a legacy in this respect is more in accord with the established law than the reverse would be. It follows, therefore, that the gift in question should be treated as a legacy for all purposes of paying the actual costs of administration, in case the estate is not otherwise sufficient to pay the same, and for the purpose of satisfying creditors, including proper claims for funeral expenses and last illness.

It follows from what has been said that the judgment appealed from must be reversed and the cause remanded for further proceedings not. inconsistent with this opinion.

CHRISTIANSON, BURKE, BURR, and NUESSLE, JJ., concur.