JOHN PUSHCASH, Plaintiff, *v.* DRY DOCK SAVINGS INSTITUTION, and JAMES F. EGAN, Public Administrator of the County of New York, as Administrator, etc., of NICOLAT ANCILENCO or NICHOLAI ANSELINKO, Deceased, Defendants.

City Court of New York, Bronx County, June 29, 1931.

*Eugene I. Yuells,* for the plaintiff.

*James J. Flood,* for the defendant Public Administrator.

DONNELLY, J. At the time of his death on January 8, 1931, the decedent had on deposit in his name in the Dry Dock Savings Institution $2,068.93. Plaintiff's action to recover said sum is based upon his claim that a few hours before his death the decedent, in contemplation of his decease, which he feared was imminent, made a gift to plaintiff of the amount so deposited.

To constitute a valid gift *causa mortis* there must be apprehension of his death from some present disease or ailment or from some other impending peril by the donor; his death; an intent to give upon the part of the donor and an acceptance by the donee; a

delivery of the thing given. (*Ridden* v. *Thrall*, 125 N. Y. 572, 579.) It is not always indispensably necessary that there be an actual, immediate, manual delivery by the donor to the donee of the thing given. If all the elements be present except actual and instant delivery by the donor to the donee, a symbolical delivery is sufficient when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow. (*Matter of Van Alstyne*, 207 N. Y. 298, 310.)

For some time prior to his death, the decedent had been living with the plaintiff, to whom, at the time he made the gift, he referred as his cousin and his only friend. On January 5, 1931, the decedent was admitted to Mount Sinai Hospital, suffering from lobar pneumonia, and was there treated by Dr. Robert V. Sager, one of the doctors, and by other doctors of said institution until his death on January 8, 1931. About eight p. m. on January 7, 1931, while Dr. Sager was making one of his routine visits to the hospital, he had a conversation with the decedent in the presence of plaintiff. Dr. Sager testified: " Q. When you came over to the cot on which Anselinko was lying, how did you find him? A. I found him seemingly worried about something. Q. Tell us in what condition you found him? A. The man was very sick at that time. Q. Was he sitting down or lying down or sitting up? A. He was sitting up. Q. What did you tell him? A. I asked him to lie down. Q. What did he say? A. He told me he wanted to get his clothes. Q. Did he tell you the purpose for what he wants to get his clothes? A. He said his bank book was in his clothes and he wanted to give his bank book to Mr. Pushcash. Q. Did he say anything else? A. He merely said he was afraid that he was going to die, and I assured him that he was not going to die as I did not want to worry him, and he said in case he did, he wanted Mr. Pushcash to have his bank book. * * * Q. Did he say anything else? A. He referred to Mr. Pushcash as being his cousin and his only friend. That is all."

The decedent died at eleven-twenty-eight p. m., January 8, 1931.

It seems to me that this testimony establishes an apprehension of approaching death upon the part of the decedent, and a clearly expressed and unequivocal intent, because of such fear, to part with dominion over and control of the subject of his gift. He suggested no postponement of the delivery by him of the gift. On the contrary, seriously ill as he was, and with the consciousness that his death was imminent, he attempted to get out of bed and procure the bank book for immediate delivery to plaintiff. Pushcash, who was at the decedent's bedside during this occurrence,

expressed a desire to get the bank book then, thus indicating his acceptance of the gift. Dr. Sager told him: " It was six o'clock and the office downstairs was closed and it could not be done at present and to come around the next day." The decedent was there, and heard all this. It was part of the conversation between himself and Dr. Sager in plaintiff's presence. Pushcash returned to the hospital in the morning of the day after Anselinko's death. Dr. Sager took plaintiff to the cashier's office in the hospital, where the bank book was. The book was then delivered to plaintiff. When decedent, as well as plaintiff, was told by Dr. Sager that the bank book was not in the decedent's clothes, but was in the cashier's office downstairs and that it could not then be had because the office was closed, but that upon the plaintiff's coming around the next day the doctor would see that the book was delivered to him, there was *then* delivery to plaintiff of the book in pursuance of the donor's intent. (*Beaver* v. *Beaver*, 117 N. Y. 421, 428.) The delivery was as perfect and complete as the circumstances and surroundings of the parties to the gift reasonably permitted, and this being so, the gift was consummated. (*Matter of Van Alstyne, ante,* at p. 309.)

I find for the plaintiff in the sum of $2,068.93, with interest thereon from January 27, 1931.

Submit findings on notice, not later than July 2, 1931.