Estate of Schreihart: Hartwig, Appellant, vs. East Wisconsin Trustee Company, Administrator, Respondent.

*November 10—December 8, 1936.*

220

For the appellant there was a brief by *Nash & Nash* of Manitowoc, and oral argument by *A. L. Nash*.

For the respondent there was a brief by *Healy & Joyce* of Manitowoc, and oral argument by *Kenneth C. Healy*.

MARTIN, J.   The appellant contends that the court erred in its finding of fact that there is no testimony that the key to the safety-deposit box or the certificates of deposit or the bankbooks were ever delivered to petitioner (appellant) or to anybody for her during the lifetime of decedent, and in its finding that the greater weight of the evidence does not indicate that there was ever any delivery made in order to effect a gift *causa mortis* or otherwise, and in its holding that the undisputed testimony did not show a sufficient delivery as a matter of law to constitute a completed gift.   It is conceded that decedent was of sound mind at the time of the declaration of the alleged gift.

Are the findings against the greater weight and clear preponderance of the testimony?   There appears to be no con-

flict in the evidence as to the controlling facts. That decedent was disposed to favor her sister, the appellant herein, is indicated by her will of April 14, 1932, under the terms of which appellant was given the homestead, which is inventoried and appraised at $7,000, and all the furniture and furnishings and personal effects of the deceased, inventoried and appraised at $13,100. Deceased left surviving three sisters, one brother, and seven nephews and nieces. The will provides that, after the payment of the expenses of last sickness and funeral and all just debts, the residue and remainder is devised and bequeathed in trust to such trustee as the court may appoint, the trustee to have the care and management of the trust estate and to pay the entire income thereof in equal shares to the appellant and her sister Blanche M. Hart, during their lifetime, and in the event of the death of either, then the entire income to be paid to the survivor. The will further provides that, upon the death of both appellant and her sister Blanche M. Hart, the trust shall terminate and the entire estate remaining is devised and bequeathed in equal shares to the seven nephews and nieces, with the further provision that, if any of the nephews or nieces should die before the termination of the trust estate, then the portion thereof provided for such beneficiary should belong to and be distributed equally among the survivors and, in the event of all of the named nieces and nephews dying before the termination of the trust estate, then said trust estate shall belong to and be distributed among the living issue of such nieces and nephews.

It appears that appellant had made her home with the deceased for upwards of twenty-nine years, and that deceased had been a widow for nine years prior to her death.

Hattie Schreihart entered the hospital on September 10, 1934. She underwent an exploratory operation on the 13th. The condition found dispelled hope for her recovery. Appellant accompanied her to the hospital and usually stayed there from 8 o'clock in the morning until 10 o'clock in the

evening. Mrs. Hart, a sister of deceased, who lives in Chicago, came to Manitowoc on the 11th and remained for some time after Mrs. Schreihart's death. While in Manitowoc, she stayed at the Schreihart home with appellant.

Mrs. Hart testified that on Saturday, September 15th, she went to the bank at the request of Mrs. Schreihart and procured the two withdrawal slips mentioned in the foregoing statement of facts. When she returned to the hospital, Mrs. Schreihart signed both withdrawal slips, leaving the name and amount blank and, in the presence of Mrs. Hart, directed appellant to fill in the amounts covering the balance in her savings and checking accounts. The slips were delivered to appellant by Mrs. Schreihart in the presence of Mrs. Hart. Appellant put them in her purse. Relative to the two certificates of deposit, Mrs. Hart testified:

"*Q.* At that time, on this Saturday morning when this check transaction occurred, did Mrs. Schreihart say anything about certificates of deposit in the same bank? *A.* Yes.

"*Q.* What did she say? *A.* She said, 'Mamie, I want you to have the certificates of deposit.'

"*Q.* Her statement as to certificates of deposit was made about the time she signed her name on those checks? *A.* Yes. She wanted Mamie to have it.

"*Q.* Did Mrs. Schreihart say anything further on this Saturday that we are speaking of as to how she was to get these certificates of deposit? *A.* I don't believe so.

"*Q.* Just announced that they be handed to her or given to her? *A.* She understood that Mamie had the key to the deposit box."

On Monday morning, the 17th, Mrs. Schreihart requested Mrs. Hart to call Mr. Gibbs and Mr. Senglaub to the hospital. They arrived together between 6 and 6:30 a. m. In this connection, Mrs. Hart testified:

"*Q.* Did she tell you why she wanted these two men called to the hospital that morning? *A.* She wanted to tell them

that she wanted Mamie to have this money in the bank and her certificates of deposit. She stressed certificates of deposit as though they might forget that part of it.

"*Q.* Tell us, as nearly as you can, what Mrs. Schreihart said when you were all four together. *A.* As far as I can remember she called them. She wanted to tell them that Mamie should have the money in the bank. Her savings account and checking account, and she said, 'I want Mamie to have my certificates of deposit.' I don't remember anything else."

It appears that at that time Mrs. Schreihart directed appellant to pay certain accounts. On her cross-examination, Mrs. Hart testified:

"*Q.* Do you mean for us to understand that you understood that Hattie was making a gift of that money to Mamie? *A.* Oh, yes.

"*Q.* How did she say it? *A.* She said, 'I want Mamie to have it.'

"*Q.* Did she say something further about the bills? *A.* She said, 'Fill in those amounts and pay the bills.'

"*Q.* Was there anything said about the time the bills would be paid? *A.* No."

Mr. George Gibbs, vice-president and cashier of the Manitowoc National Bank, testified that he knew Hattie Schreihart very well in a business way in her lifetime; that she did her banking at his bank, and from time to time consulted with him on business matters. Relative to his conversation with Mrs. Schreihart at the hospital on the morning of September 17th, he testified:

"Mr. Senglaub and I went up together. We immediately went to Mrs. Schreihart's room. Mrs. Hart of Chicago and Mamie Hartwig, sisters of Mrs. Schreihart, were there. Besides Mrs. Schreihart, there were four persons present. Mrs. Schreihart was very ill and in bed. On entering, Mrs. Schreihart recognized both Mr. Senglaub and me, and told us that the reason she had called us was because she knew

she was quite ill, and said in her own words that 'she wanted the money on deposit in our bank to go to her sister, Miss Hartwig, who is here present now.' We were in the room probably ten minutes, during which time both Mr. Senglaub and I had personal conversation with Mrs. Schreihart and tried to encourage her in her illness. She was normal in all her remarks. Her particular statement that I recall was to the effect that her money in the bank went to her sister Mamie Hartwig. Mrs. Schreihart mentioned an intention of this sort to me before this occasion and before her illness."

Mr. Otto H. Senglaub testified that Mrs. Schreihart, after the death of her husband, had consulted him at different times in regard to her business affairs. As to what took place at the hospital on the morning of September 17th, he testified:

"Besides myself, Mamie Hartwig, Mrs. Hart, Mr. Gibbs, and Mrs. Schreihart were present. Mrs. Schreihart made a statement in the presence of these four persons that she had asked Mr. Gibbs and me to come. I shook hands with her and wanted to know how she was getting along, and so on; she immediately told us that she wanted all the money in the Manitowoc National Bank to be turned over to Mamie Hartwig. She mentioned the fact that she had a will made. Also mentioned that she wanted the bills paid. I told her if she had a will made that would settle everything, but she particularly emphasized the fact that she wanted the money that was in the Manitowoc National Bank to go to Mamie Hartwig. She did not say just how the transfer of the money in the bank was to be made to her sister, and I took it for granted that she wanted Mr. Gibbs and me to accomplish that for her. She said she only wanted the transfer taken care of at the bank and that all the funds at the bank were to be transferred to Mamie Hartwig."

The appellant testified:

"I had the key to the safety box in which the certificates were ever since Hattie went to the hospital. I had the bankbook and keys the same length of time."

Hence it appears that at the time the declaration of gift was made the donee had in her possession the two checks or withdrawal slips which had been signed on September 15th, and which were delivered to the donee with instructions that they be filled out for the full amount on deposit in the savings and checking accounts. She also had in her possession the key to the safety-deposit box in which were the two certificates of deposit; also the savings and checking account passbooks.

It appears that after Mrs. Schreihart's death there was a conference between appellant, her sister Mrs. Hart, and Mr. Senglaub, at which time appellant turned over to Mr. Senglaub the key, passbooks and certificates of deposit. Appellant claims that this was done for the purpose of having Mr. Senglaub tend to her affairs and not for the purpose of including the funds in the decedent's estate. At that time he was not acting as administrator with the will annexed. He received that appointment on November 8, 1934. In explaining how he came to include the gift property in the inventory of the assets of the estate, Mr. Senglaub testified:

"I included in the fund the gift that Hattie Schreihart made to Mamie Hartwig, because I expected that would be all subject to any future order. At that time I wasn't aware of the law in reference to gifts. I understood from my conversation with Mrs. Schreihart at the hospital that a gift was made, but I saw what the will stated and, of course, I held that in abeyance."

Upon the evidence in this case, there can be no doubt as to Mrs. Schreihart's intention to make a gift of the money which she at that time had on deposit in the Manitowoc National Bank represented by her savings and checking accounts and the two certificates of deposit. She was leaving a substantial estate to be administered under the terms of her will. It is clear that she intended to make a gift of the

money on deposit to her sistèr Mamie. The real inquiry here is whether the evidence shows a sufficient delivery of the subject of the gift. Whether it be a gift *inter vivos* or a gift *causa mortis,* the requirement of delivery is the same.

In *Estate of Dohm,* 188 Wis. 626, 628, 206 N. W. 877, the court said:

"The general subject of gift is pretty well defined in the law. There must be a present intention to give, and a surrender of dominion over the property given by the donor to the donee, such surrender to be evidenced by actual delivery of the property where it is capable of immediate delivery, or by the best evidence of delivery of which the subject is reasonably susceptible. In the older cases this rule was strictly enforced, but there has come a modification of the rule in later years indicating greater liberality in upholding gifts, in order to carry out the clear and unmistakable intention of the donor." Citing *Opitz v. Karel,* 118 Wis. 527, 530, 95 N. W. 948.

That a valid gift of the money deposited in a savings bank may be effected by the delivery to the donee of the depositor's passbook with intent to give the donee the deposit represented thereby is held in *Union Trust & Savings Bank v. Tyler,* 161 Mich. 561, 564, 126 N. W. 713. In *Pushcash v. Dry Dock Sav. Institution,* 140 Misc. 579, 251 N. Y. Supp. 184, a gift of a savings bank account was upheld under the following circumstances: The donor was on his deathbed in a hospital when he declared his intention to make gift of his bank deposit. The donee, who was present, expressed a desire to get the bankbook. The donor, believing that the bankbook was in his clothes in the room, made an attempt to get out of bed and procure it for immediate delivery to the donee. The doctor in charge then stated that the bankbook was in the cashier's office downstairs; that the office was closed; that delivery could not be made that night and requested the donee to come around the next day. Before

Pushcash returned the following day, at which time the book was delivered to him, the donor had died. Donee brought action to recover the amount of the deposit evidenced by the bankbook, claiming as a gift the amount so deposited. The court held that delivery was as complete as the circumstances and surroundings of the parties to the gift reasonably permitted, and, this being so, the gift was consummated. Citing *Matter of Van Alstyne,* 207 N. Y. 298, 309, 100 N. E. 802.

Delivery of the key to a safety-deposit box constitutes a sufficient symbolical delivery of the contents of the box to sustain a gift *causa mortis. Harrison v. Foley* (C. C. A.), 206 Fed. 57; *Hagemann v. Hagemann,* 204 Ill. 378, 68 N. E. 381; *Rosenau v. Merchants' National Bank,* 56 N. D. 123, 216 N. W. 335, 60 A. L. R. 1040; *Foley v. Harrison,* 233 Mo. 460, 136 S. W. 354. The appellant testified that she had the key to the safety-deposit box and the savings and checking account passbooks from the time Mrs. Schreihart went to the hospital. On September 15th, she received the withdrawal slips covering the savings and checking accounts from Mrs. Schreihart, signed by her, with directions to fill in the blanks as to name and amount and withdraw the deposits.

In *Wing v. Merchant,* 57 Me. 383, 387, the court said:

"It matters not whether the change of possession takes place before or after, or at the time of the utterance of the words importing a gift, if there is a manifest design on the part of the donor that the donee should thereafterwards hold such possession absolutely, as of his own property. Thenceforward, the possession and the right are concurrent in the same person, and the gift is perfect and irrevocable."

The evidence shows that at the time Mrs. Schreihart made the declaration in the presence of Mr. Gibbs, her banker, and Mr. Senglaub, whom she had consulted on many occasions in business matters, and in the presence of her sisters, Mrs.

Hart and the appellant, she knew that appellant had possession of the key to her safety-deposit box and the bankbooks evidencing her savings and checking accounts. She knew that the appellant then had in her possession the two withdrawal slips which she had personally signed and delivered to appellant on the preceding Saturday, September the 15th. It is very apparent that decedent's purpose in having her banker and business adviser present when she was about to make the declaration of gift was that she wanted to make certain that nothing would stand in the way of Mamie's receiving all moneys on deposit represented by the certificates of deposit, the savings and checking accounts. Under such circumstances, the mere possession by the donee of the indicia of ownership of the gift property, coupled with the unequivocal declaration of gift, is all that is required to complete the gift in the instant case. We must hold that the findings are against the great weight and clear preponderance of the evidence. The appellant's petition should have been granted.

*By the Court.*—Judgment reversed. Record remanded with directions to enter judgment in favor of the appellant granting the prayer of her petition.