## Williams, et al. v. Williams, et al.

(Decided February 21, 1928.)

### Appeal from Lee Circuit Court.

Deeds.—In suit by illegitimate children of deceased to be adjudged owners of certain land, brought against deceased's collateral kindred, evidence held sufficient to support judgment dismissing petition on ground that signature to deed, under which plaintiffs claimed, was not that of deceased.

J. M. McDANIEL, T. B. BLAKEY and BEVERLEY & JOUETT for appellants.

E. B. ROSE and CARTER·D. STAMPER for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

P. M. Williams died in Lee county, Ky., in July, 1924. He had never been married. He was the owner of

a tract of land containing 405 acres on which he was living at the time of his death. Sarah Lewis Gilbert and her husband, Isaac Gilbert, were living on this farm and perhaps in the residence with him at the time he died. Mrs. Gilbert was the mother of six children, the appellants, Henry H. Williams, Annie M. Fields, Phillip F. Williams, Carry M. Williams Johnson, and Jennie M. Branson being five of them, and P. M. Williams, Jr., being the sixth. It will be observed that these children bear the name "Williams," and it is claimed by appellants that, though they were born of their mother while she was living with her husband, Isaac Gilbert, P. M. Williams, deceased, was their father. The five appellants by this action sought to have it adjudged that they are the owners of the 405-acre tract of land and to quiet their title thereof. The parties defendant, now appellees, are the collateral kindred of P. M. Williams, deceased; and they by answer and counterclaim denied ownership of the tract of land in appellants, asserted their ownership of it by inheritance from P. M. Williams, and sought to quiet their title. The chancellor adjudged that appellants failed to manifest their right to the relief sought and dismissed their petition. On the counterclaim of appellees it was adjudged that they own the 405-acre tract of land. Appellants have appealed from that judgment.

Appellants' claim to ownership is founded upon a deed alleged to have been signed by P. M. Williams, deceased, but which, however, was never acknowledged. It is their claim that a day or two before his death he made symbolic delivery of the deed to Sarah Lewis Gilbert for them by delivering to her the key to the box in which the deed was then kept. It is insisted for them that the facts hereof bring the case clearly within the principles of law announced by this court with reference to either gifts inter vivos or gifts causa mortis. Shoptaw v. Ridgway's Adm'r, 22 Ky. Law Rep. 1495, 60 S. W. 724; 8 R. C. L. 923; Wilson v. Rybolt, 17 Ind. 391, 79 Am. Dec. 486; King v. Gibson, 32 Ill. 348, 83 Am. Dec. 269; 20 Cyc. 1228, and 1192; and Stephenson's Adm'r v. King, 81 Ky. 425, 50 Am. Rep. 173—are cited as supporting their contention. Hence they vigorously urge that the judgment of the chancellor is erroneous and should be reversed.

Appellees insist that the judgment of the chancellor is correct and may be upheld upon any one of a number of grounds. They insist that the weight of the evidence

conduces to prove that P. M. Williams, deceased, did not sign the alleged deed; that under the deed relied upon by appellants Sarah Lewis Gilbert took an interest and, being interested, is precluded by section 606 of the Civil Code of Practice from testifying as to the conversation between her and P. M. Williams, relied upon by appellants to establish the symbolic delivery of the deed; and that, even though her testimony be held to be competent, it is not sufficient to bring the case within the rules adhered to by this court with reference to symbolic delivery in cases of gifts inter vivos or causa mortis. The chancellor did not indicate what the ground was upon which the judgment was founded.

It is to be observed that, if it appears from the evidence herein that the signature of the deed in question is not that of P. M. Williams, that fact would be conclusive. As has been stated, the deed relied upon by appellants does not purport to have been acknowledged by Mr. Williams, as no certificate of acknowledgment is appended. No witness for appellants testified that they saw P. M. Williams sign this deed. Walter B. Davidson, who runs a restaurant in Lexington, Ky., testified that in the fall of 1920, Mr. Williams in his place of business borrowed a pen from him with which to sign a document and that he signed it and returned the pen to him. He did not, however, read or have read to him the instrument in question, and the only thing tending to identify the instrument signed on that occasion with the deed in question is he testified that the instrument which he saw signed was inclosed in a blue wrapper, and the deed relied upon by appellants has a blue back or wrapper on it. He testified further, however, that when Mr. Williams returned the pen to him on that occasion he said that he had signed a will for his woman and children. Mrs. Davidson also testified. She, however, did not see the paper or see Mr. Williams sign it, but testified that some time in the year 1920 she had a conversation with Mr. Williams in which he told her about the number of illegitimate children he had by Mrs. Sarah Lewis Gilbert, and in the course of the conversation stated that "he had made a deed or something to his children and the woman." Isaac Gabbard, a neighbor of Mr. Williams, testified that Williams told him some time in the year 1922 that he intended "right away" to make disposition of his landed estate and that he was "aiming to give it to his children." So that the testimony that he had signed

a deed or will in 1920 is at variance with that of Gabbard, who testified that Williams said, two years later, that he had not but intended to give it to the "woman and children." Anderson Johnson testified that Williams stated to him that he "was aiming for his woman and children to have what he had." He was not very definite in fixing when this conversation occurred. J. E. King testified that he talked several times with Mr. Williams about the way he was living, and that on several occasions Williams told him "that he intended to fix for his children to have what he had." He also stated that in April or May before he died in July he told him "that he had fixed it; he had fixed his papers for the children to have what he had." Isaac Wilder testified that Mr. Williams told him about 8 years before his death "he aimed for his children to have what he had." This was all the testimony offered by appellants that the name "P. M. Williams" signed to the deed was genuine, except that one of his illegitimate children, known in the record as P. M. Williams, Jr., who, it is claimed for appellants took no interest under the deed, testified that he was familiar with the handwriting of his father, and that in his opinion the signature on the deed in question was genuine.

On the other hand, two handwriting experts compared the signature on the deed in question with a number of specimens of P. M. Williams' signatures, which are admitted to be genuine, and stated that the signature to the deed was not that of P. M. Williams. Three bankers also testified, and they qualified as being acquainted with the handwriting of Mr. Williams, having often seen him write, and gave it as their opinion that the signature to the deed relied upon is not his signature. The deed in question and a number of the admitted genuine signatures of Mr. Williams have been brought with the record to this court, and we have had the same opportunity that was afforded the chancellor to compare the questioned signature with the admitted genuine ones. This comparison, as the members of this court view the question, affords ample evidence to support the judgment of the chancellor founded upon the theory that the signature to the deed relied upon is not that of P. M. Williams. The testimony on this question is not such as convinces this court that the chancellor has erred in adjudging that appellants' petition be dismissed. A consideration of all of the evidence on this question leaves

the mind in such doubt that it cannot be said with reasonable certainty that the chancellor has erred. In fact, the weight of the evidence appears to this court to be in favor of the finding that the signature to the deed in question is not that of P. M. Williams. That being true, the entire case for appellants fails, regardless of the other questions involved by this appeal.

For this reason, the judgment appealed from will be affirmed.